478 So.2d 218 (1985)
James E. MEYLIAN, Plaintiff-Appellant,
v.
Virginia MEYLIAN, Defendant-Appellee.
No. 84-838.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1985.
Trimble, Percy, Smith, Wilson, Foote, Walker & Honeycutt, Elizabeth E. Foote, Alexandria, for plaintiff-appellant.
James Downs, Lafayette, for defendant-appellee.
Before GUIDRY, STOKER and KING, JJ.
GUIDRY, Judge.
This is a custody dispute involving the parties' two minor children, Carmen and Mark, ages 9 and 12, respectively, at the time of hearing. The trial court awarded joint custody to both parents; nine months of physical custody to the mother and three months of physical custody to the father. The plaintiff, James Meylian, appeals urging that under the present law he should have been granted physical custody for a six month period each year. The defendant neither appealed the decision nor answered the plaintiff's appeal.

*219 FACTS
The plaintiff, James E. Meylian, and the defendant, Virginia Meylian, were married in Rapides Parish on March 22, 1969. Two children, Carmen Anne Meylian and Mark Edward Meylian, were born of this union. Plaintiff filed a petition for separation from bed and board on June 29, 1978. A final divorce was obtained on October 14, 1980. During the separation and up until the present litigation, the mother has had sole custody of the minor children. In August, 1983, James filed a petition requesting joint custody of the two minor children.
In his petition, James proposed a plan of joint custody which he alleges is in the best interest of the children. This plan called for the children to reside with James from March 1 until August 31 of every year; Virginia would have custody during the remaining six month period of every year. During these periods, the non-custodial parent would have visitation privileges every other weekend. The parents would share the holidays with the children, alternating the major holidays of New Years, Easter, Fourth of July, Labor Day, Thanksgiving and Christmas of each year. The parents would divide equally the number of days in the Christmas, Thanksgiving and Easter school holidays. The plan stipulated that the children would continue attending school in Alexandria and that James would be responsible for their transportation while they were residing with him. The non-custodial parent was to provide all transportation for visitation purposes. Each of the parties would be responsible for the support of the children during the time in which the children resided with them including food, clothing, shelter, educational expenses, entertainment, medical and dental expenses. Lastly, no party would pay to the other any monthly child support payments.
At the hearing, Virginia conceded that, under the present custody laws, James is entitled to an adjudication of joint custody. However, Virginia disagreed with the plan proposed by James. She contended that such a plan would not be in the best interest of the children. Virginia then proposed a plan that would give the mother custody for approximately nine months and the father custody for approximately three months during the summer. Virginia also proposed visitation and holiday exchange rules as well as terms for child support.
The record reflects that James lives in Hinestown, Louisiana, in a four bedroom mobile home situated on a two acre tract of land. The mobile home has no air conditioning and no telephone. James testified that the children have become close friends with a number of other children living in the vicinity of the trailer.
James testified that he works as a millwright. Because of his vocation, he is required to travel out-of-state, and he often has to stay away from home for a number of days. James stated that if the court granted the six month visitation plan, he would find work on a local basis. James further declared that the local employers were willing to let him start work after he took the children to school, and that he could leave work early enough to pick the children up from school.
The record also reflects that if James' plan were implemented, James would have been required to transport the children to their respective schools for 50 days out of the school year. The schools the children attended in Alexandria were approximately 28-30 miles away from James' residence. Their religious education also takes place in Alexandria.
Virginia Meylian, the defendant, lives in Alexandria. At the time of the joint custody hearing, she had remarried. Besides the two children, who are the subjects of the custody dispute, Virginia has an older daughter from a previous marriage. Virginia works as a waitress at a restaurant approximately 15 hours per week during the evening and at night. While she works, her husband or her eldest daughter watch over the two Meylian children. From 1978 until the joint custody hearing in 1983, Virginia has had sole custody of the children. During that period of time, she was the dominant figure in making *220 crucial decisions for the children in the areas of health, education and religion.
Without any objection by opposing counsel, Virginia testified that the children told her that the six month custody plan would "tear them up". We quote from the record in pertinent part:
"Q. And, would you tell the Court what objections you have insofar as the plan which has been proposed by Mr. Meylian as outlined by his counsel, that is, dividing the children 6 months, six months.
A. Well, it would tear Carmen up completely... she's not going for this ... just even six months at a time ... Mark isn't in completely (sic) agreement with it, but he is afraid to say anything because he's afraid he'll hurt his Daddy, he doesn't want his Daddy to know that he is not in agreement with it ..."
At the time of the joint custody hearing, the children were attending school and religion classes in Alexandria. Both of the children were well adjusted to the previous custodial arrangement. Mark was involved in football after school and Carmen was going to start tap or ballet classes. Both of the children are honor roll students.
From the trial record, it is apparent that both of the parents have love, care and concern for their children. There is no evidence of physical abuse and there is no evidence that either parent is causing any detrimental psychological effect upon the children. The plaintiff and defendant do not have a history of animosity towards one another. There is no evidence that the parties ever used the children as weapons for revenge.
The trial judge, in his oral reasons for judgment, adopted the joint custody arrangement proposed by Virginia. He stated that, because of the 30 mile distance from Hinestown to Alexandria, the six month plan would be difficult to implement and it would be burdensome on the children. The trial court noted that disruptions in the children's education and extra-curricular activities were likely to occur under the six month plan proposed by James. As aforestated, James has appealed contending only that, under La. C.C. Art. 146, the parents are entitled to equal periods of physical custody (a 50-50 sharing of the children).

DOES LA. C.C. ART. 146 REQUIRE EQUAL SHARING OF PHYSICAL CUSTODY
LSA-C.C. Art. 157 states in part:
"A. In all cases of separation and divorce, and change of custody after an original award, permanent custody of the child or children shall be granted to the parents in accordance with Article 146."
LSA-C.C. Art. 146 states in part:
"C. There shall be a rebuttable presumption that joint custody is in the best interest of a minor child."
Paragraph A of LSA-C.C. Art. 146 states in pertinent part: "A. If there are children of the marriage whose provisional custody is claimed by both husband and wife, the suit being yet pending and undecided, custody shall be awarded in the following order of preference, according to the best interest of the children:

(1) To both parents jointly. The court shall, unless waived by the court for good cause shown, require the parents to submit a plan for implementation of the custody order, or the parents acting individually or in concert may submit a custody implementation plan to the court prior to issuance of a custody decree. A plan of implementation shall allocate the time periods each parent shall enjoy physical custody of the children and the legal authority, privileges and responsibilities of the parents." (Emphasis ours).
Before the 1983 amendments (Act 695 of 1983), paragraph D of LSA-C.C. Art. 146 read:
"D. For purposes of this Article, "joint custody" shall mean the parents shall share the physical custody of children of the marriage, subject to any plan of implementation effected pursuant to Paragraph A of this Article, and shall *221 enjoy the natural cotutorship of such children in accordance with Article 250. Physical care and custody shall be shared by the parents in such a way as to assure a child of frequent and continuing contact with both parents. An award of joint custody obligates the parties to exchange information concerning the health, education and welfare of the minor child, and, unless allocated, apportioned, or decreed, the parents or parties shall confer with one another in the exercise of decision-making rights, responsibilities, and authority." (Emphasis ours).
After the 1983 amendments, paragraph D of LSA-C.C. Art. 146 stated in pertinent part:
"D. For purposes of this Article, "joint custody" shall mean the parents shall, to the extent feasible, share the physical custody of children of the marriage. In making an award of physical custody, the court shall consider, among other things, the factors enumerated in Paragraph (C)(2)...." (Emphasis ours).
This amendment became applicable on August 30, 1983, one day after the custody hearing.
The law applicable at the time this hearing took place stated that the "parents shall share the physical custody of the children of the marriage." The law also stated that "a plan of implementation shall allocate the time periods each parent shall enjoy physical custody of the children ... in such a way as to assure a child of frequent and continuing contact with both parents." Considered together, it is apparent the trial court has the discretion to approve an infinite variety of joint custody agreements. The statutes do not, in our view, mandate an equal sharing of physical custody.
Joint custody means physical sharing of the children in addition to both parents' participation in decisions affecting the children's lives; however, it does not necessarily mean 50-50 sharing of time. Carroway v. Carroway, 441 So.2d 494 (La.App.2d Cir. 1983); Plemer v. Plemer, 436 So.2d 1348 (La.App. 4th Cir. 1983).
Many joint custody plans provide for physical custody with one parent during nine months of the year, corresponding to the school year, with the child residing with the other parent during three months, corresponding to the summer vacation months. Hatchett v. Hatchett, 449 So.2d 626 (La.App. 1st Cir.1984), writ denied, 457 So.2d 11 (La.1984); Johnson v. Johnson, 444 So.2d 283 (La.App. 1st Cir. 1983); Plemer v. Plemer, supra; Spaht "Developments in the Law 1983-1984, Child Custody", 45 La.L.Rev. 467 at 480, 1984. The nine month-three month custody plans are desireable when the parents live in different cities, different states, or when one of the parents lives relatively far away from the child's school.
The 1983 amendments to LSA-C.C. Art. 146 have been held to be quasi-procedural and remedial in nature, thus, retroactive in their application. Chaudoir v. Chaudoir, 454 So.2d 895 (La.App. 3rd Cir.1984). The amendment to LSA-C.C. Art. 146, paragraph D, added the phrase "to the extent feasible". This amendment merely clarified what could already be discerned from the prior law. The addition makes it even more apparent that the legislature intended to give the trial court great discretion in styling joint custody plans.
From the above, we conclude that the joint custody laws do require a physical sharing of the children. However, the custody laws do not mandate an equal or 50-50 sharing of the physical custody of the children.
The sole criterion for deciding child custody cases is the best interest of the child. Turner v. Turner, 455 So.2d 1374 (La. 1984); Ferry v. Ferry, 433 So.2d 359 (La.App. 3rd Cir. 1983); Bishop v. Bishop, 457 So.2d 264 (La.App. 3rd Cir.1984), writ denied, 460 So.2d 1048 (La. 1984).
On appeal, the trial court's decision in a child custody case will only be disturbed when there has been a manifest abuse of discretion. Ferry, supra; Bishop, *222 supra. Even if the parties agree to joint custody, it is still the duty of the court to adopt a plan of joint custody which is in the best interest of the child.
After considering the testimony and the findings by the trial court, we conclude that the court used the proper standard in drafting the joint custody plan and that the trial court did not manifestly abuse its discretion in this case. Accordingly, we affirm the trial court's judgment.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against the plaintiff-appellant.
AFFIRMED.