484 So.2d 277 (1986)
Donald J. ALLEN, Plaintiff-Appellant,
v.
Peggy Marks ALLEN, Defendant-Appellee.
No. 84-1165.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1986.
J.N. Prather, Jr., Lafayette, for plaintiff-appellant.
Ronald J. Gossen, Lafayette, for defendant-appellee.
Before GUIDRY, LABORDE and KNOLL, JJ.
LABORDE, Judge.
This appeal involves the custody of two boys. The trial court determined that joint custody would be in the best interest of the children and ordered that Mrs. Allen take physical custody of the children except for one month in the summer, every other weekend, and alternating holidays (which would be spent with Mr. Allen). We find that the trial court abused its discretion in not ordering more liberal physical custody rights to Mr. Allen. The best interest of the boys requires that they spend more time with their father than provided for in the custody judgment. We amend the *278 judgment of the trial court for this reason and affirm as amended.
Donald Allen seeks a change of custody of his minor boys from their mother to himself. Alternatively, plaintiff seeks joint custody with physical custody vesting in himself. In addition, plaintiff argues that the trial court erred in preventing appellant from eliciting from appellee her feelings regarding some factors under La.C.C. art. 146.
Appellant, Donald J. Allen, and appellee, Peggy Marks Allen, were married on January 26, 1974. Two children were born of this union, namely, Robert, age seven (7) and Tommy, age five (5).[1] Unhappily, the marriage devolved to an unacceptable level. The situation most notably deteriorated due to two factors: Mr. Allen's devotion to his job (with his concomitant lengthy work hours) and Mrs. Allen's fragile mental health (with her recurrent inability to cope with reality and subsequent hospitalizations). Both of these problems seem to have abated.
To identify problems facing a mother and a father is not to declare them unfit parents. A child's devotion to his parents transcends objective notions of "normality." But objective factors and elements we are relegated to use in considering the children's best interest. It would be meaningless for us to recite all of the testimony evidencing the present lifestyles of each of the parents. We do note the more salient features below.
Mr. Allen, while married to appellee, had regularly worked over fifty-five hours a week with "on-call" duty every weekend. He now works a forty hour week with "on-call" duty just one weekend a month. He is on financially sound footing and has ample free time to spend with the boys. Mr. Allen professes and demonstrates that he deeply loves and cares for his boys. His plan for caring for the boys is well developed and suitable to their needs. The plan would, however, require other people to transport the children to and from a new school. The plan would also require other people to care for the children after school until 5:15 p.m.
Mrs. Allen, as alluded to earlier, has a history of mental illness. She has received psychological treatment since 1967 and has voluntarily committed herself to mental health facilities for more intensive treatment. She is under the care of Dr. Sidney Dupuy who, while opining that Mrs. Allen is mentally capable of rearing the children, admitted that she suffers from schizophreniform disorder, bipolar affective disorder, and alcohol abuse.[2] To control these disorders, Mrs. Allen is heavily medicated: she is on tranquilizers and drugs to counteract the effects of tranquilizers. As a condition to joint custody, the trial court ordered Mrs. Allen to continue psychological treatment and to take medication so prescribed.
Mrs. Allen has done a commendable job rearing her children. She has had sole physical custody of the boys since June of 1982. She obviously loves Bobby and Tommy and cares for their needs. A Catholic, Mrs. Allen takes the boys to Sunday Mass and raises them in their chosen faith. Mrs. Allen enjoys the boys' company and participates in various activities with them.
Mrs. Allen is a full time employee at her father's hardware store. Although she usually works all day Monday-Friday and one-half day Saturday, she can take time off as needed, and can arrange for more flexible hours. The boys are welcome and encouraged to spend time in the store's lounge area. Many of Mrs. Allen's relatives work in the store and mind the boys.
Mrs. Allen and the boys live in a backyard cottage located behind her parents' house. This cottage is just across the street from the hardware store, and roughly *279 one hundred yards from the boys' parochial school. At the time of trial, Mrs. Allen anticipated moving into a larger house, closer to school and just down the block from the hardware store.
The plan for care of the children devised by Mrs. Allen is realistic and would maintain the stable homelife in which the boys have thrived and prospered. Viewing the totality of the circumstances, we agree with the trial court that Mrs. Allen should continue to care for the children during the school year. No purpose would be served by disrupting their habits.
The standard of review in custody cases requires us to give the trial court decision great weight, and to overturn it only when there is a clear abuse of discretion. Bentley v. Bentley, 440 So.2d 1362 (La.App. 3d Cir.1983). The best interest of the child remains the paramount consideration in any custody determination. Ferry v. Ferry, 433 So.2d 359 (La.App. 3rd Cir. 1983). To modify a joint custody order it must be shown that the best interest of the child requires modification of the order. La.C.C. art. 146E; Baudoin v. Hebert, 463 So.2d 78 (La.App. 3d Cir.1985).
The trial court, we feel, did not give sufficient weight to the importance of the boys spending more and more time with their father as they get older. This is particularly relevant given two facts: (1) the boys desire to live with their father; and (2) the boys are entering into a developmental stage in which the "male role model" or father plays an increasingly important function. Mindful that no joint custody implementation plan is infallible, we feel that modifying the plan to put the boys in the physical custody of Mr. Allen for longer periods of time would be in the best interest of the children.
Joint custody means a physical sharing of the children in addition to both parents' participation in decisions affecting the children's life. However, it does not necessarily mean a fifty-fifty sharing of time. Each case will depend on the child's age, the parents' situations, and other factors relevant to a particular child custody dispute. See La.C.C. art. 146C(2); Carroway v. Carroway, 441 So.2d 494 (La.App. 2d Cir.1983).
The record before us is replete with evidence demonstrating the situations of both parentsboth their strong and weak points. The best interest of the boys would be served by placing them in the physical custody of Mr. Allen for greater periods of time. We amend the trial court's judgment granting custody and visitation: Mrs. Allen is to continue physical custody of the boys over the school year. During that approximately nine-month period, Mr. Allen is granted physical custody of the boys all weekends save one per month. During summer vacation, Mr. Allen is to assume physical custody during the weekdays with Mrs. Allen sharing all weekends but one per month with the boys. The parent with physical custody is liable for the boys' conduct. Holidays are to be alternated as directed in the trial court's judgment. Mr. Allen is relieved of making custody payments during the three summer vacation months.
Several recent cases help to further explain the desirability of joint custody with extensive shared physical custody provisions. We adhere to the analysis of these cases: Baudoin v. Hebert, 463 So.2d 78 (La.App.3d Cir.1985); Doucet v. Doucet, 465 So.2d 175 (La.App. 3d Cir.1985); Chaudoir v. Chaudoir, 454 So.2d 895 (La.App. 3d Cir.1984); Adams v. Adams, 441 So.2d 490 (La.App. 2d Cir.1983); Plemer v. Plemer, 436 So.2d 1348 (La.App. 4th Cir.1983).
Appellant refers this court to the recalcitrance of the trial court in not allowing appellant or appellee to comment on their respective attitudes concerning certain factors enumerated in La.C.C. art. 146C; specifically, that each parent should have been permitted to express his views on allowing the boys frequent and continuing contact with the non-custodial parent. This error complained of, if error at all, is harmless. It is clear from other testimony that Mrs. Allen, in the past, has grudingly allowed the boys to visit with their dad. *280 Mrs. Allen also noted that now she wants the boys to develop a close personal relationship with their father. Likewise, Mr. Allen made it clear that he would encourage the boys to continue their close relationship with their mother. We agree with appellant that it would have been appropriate for the trial court to adduce each parents' attitude concerning all of the factors in La.C.C. 146C. We find that the parents' attitudes were obvious to the trial judge, and that he considered all of the factors outlined in La.C.C. art. 146C properly.

DECREE
For the above and foregoing reasons, the judgment of the trial court is amended as follows:
Donald J. Allen shall have the physical custody of the children for a period commencing the weekend after their summer vacation begins until the weekend before their school resumes; in addition, he shall have physical custody every weekend, save the one weekend he is "on-call" per month, during the school year. Donald J. Allen is relieved of paying child support for the three summer months.
Peggy Marks Allen shall continue the physical custody of the children during the school year; in addition, she shall have physical custody every weekend save one per month during the children's summer vacation.
In all other respects, the judgment of the trial court is affirmed. Costs are assessed equally between Mr. and Mrs. Allen.
AFFIRMED AS AMENDED.
NOTES
[1] Ages indicated taken from the trial court's reasons for judgment, July 6, 1984.
[2] Dr. Dupuy described schizophreniform disorder as "a disorder which is shortlived and has to do with someone being out of touch with reality... [b] ipolar affective disorder is the more recent name for manic depressive illness, and it implies a swinging moods [sic] from elation to depression."