592 So.2d 862 (1991)
Scott Lee STANLEY, Respondent-Appellee,
v.
Dianna Dee Smith STANLEY, Relator-Appellant.
No. W91-931.
Court of Appeal of Louisiana, Third Circuit.
December 18, 1991.
Davis & Saybe, Michael H. Davis, Alexandria, Love, Rigby, Dehan, McDaniel & Goode, Kenneth Rigby, Shreveport, for relator-appellant.
Percy, Smith, Foote & Honeycutt, Elizabeth E. Foote, Alexandria, for respondent-appellee.
*863 Before DOMENGEAUX, C.J., and GUIDRY and KING, JJ.
GUIDRY, Judge.
This is a dispute over the custody of a minor child. The parties to this action were married on November 21, 1981. One child, Brandon Scott Stanley, was born of this marriage on February 23, 1984. He is now seven years old and is in the second grade.
Scott and Dianna were divorced by judgment rendered and signed on May 7, 1987. The judgment awarded joint custody to the parents with Scott designated as the domiciliary parent with physical possession of Brandon 21 days per month for the nine month period between September and May. Dianna was granted physical custody of Brandon during the summer, with Scott having custody every other weekend and for one week in the latter part of July. At the time, Brandon was three years old. His mother and father agreed to this arrangement and it was incorporated into the divorce judgment. As such, it was not a "considered decree" after litigation of the issue.
On August 23, 1989, Dianna filed a Rule for Change of Joint Custody Plan, asserting that, under the original plan, she was designated to become the domiciliary parent when Brandon reached school age. At the time, Brandon was scheduled to start kindergarten in the fall of 1989. The parties compromised the rule by joint stipulation signed on September 28, 1989. A judgment incorporating the substance of the stipulation was signed on October 17, 1989. In accordance with this judgment, Dianna became the "primary residential custodian" of Brandon during the school year. Scott was granted visitation rights every other weekend during this period and physical custody of Brandon for the summer months. Dianna was awarded two weeks visitation during the summer and also visitation rights every other weekend during this period. The major holidays were alternated amongst the parents according to the stipulation. At the time this judgment became effective, Dianna was living in Shreveport and Scott was living in Alexandria. This also was not a "considered decree" since it resulted from an agreement of the parties.
On June 3, 1991, Scott filed a petition for change of custody alleging that it was no longer in the best interest of Brandon that his mother remain as the domiciliary parent. He alleged that he was able to provide a more stable environment and was more capable of providing for the physical, emotional and moral needs of the child. Dianna answered this petition denying that a change in custody was in the best interest of Brandon. She alleged that no change in circumstances had occurred, and sought an increase in child support payments. Scott then filed two separate supplemental petitions for change of custody. He alleged that Dianna had interfered with his visitation rights and that she had become mentally unfit to continue as Brandon's domiciliary parent.
Trial of this matter was held on August 19, 1991 and August 26, 1991. Because of a series of compromises and resulting stipulations, the only issue at trial was whether primary custody of Brandon should be transferred from Dianna to Scott. The trial court rendered judgment in this case on August 26th, at the conclusion of the trial. It substantially modified the previous custody decree as follows:
"The father, Scotty Lee Stanley, is granted primary custody of Brandon for the school years designated 1991-92 and 1994-95 with the mother, Dianna S. Stanley, having primary custody for the school years designated 1992-93, 1993-94, 1995-96 and 1996-97. Beginning in June, 1997, at which time Brandon will be thirteen years old, his father Scotty Stanley will be the primary custodial parent until Brandon reaches the age of majority.
The parties are ordered to agree upon, and present to the court for approval, a schedule for physical custody of Brandon for the summer periods, holidays, and weekends. This plan shall be presented to the Court for approval within thirty (30) days of the signing of this judgment.

*864 Physical custody of the child for the school year 1991-1992 is to be transferred to Scotty Lee Stanley on Saturday, August 31, 1991."
The trial judge signed this decree on August 29, 1991. Dianna applied to this court for a supervisory writ seeking reversal of the trial court's judgment and a stay of its implementation. We granted Dianna's writ application and stayed all proceedings in this case pending further action of this court.
Dianna urges reversal of the trial court's judgment arguing that enforcement of the judgment will have a disruptive effect on Brandon's education; his ability to make and keep lasting friendships; and, is not in the "best interest of the child". La.C.C. art. 146(E) (repealed), redesignated as La. C.C. art. 131(E) pursuant to Acts 1990, No. 1008, § 8 and Acts 1990, No. 1009, § 10.
For the reasons which follow, we reverse, concluding that the trial court's judgment maintaining joint custody but alternating primary custody between the parents is not in the best interest of the child.
When reviewing a child custody decree, the appellate court must give great weight to the determination of the trial judge and may only overturn such determination when there is a clear abuse of discretion. Segura v. Forrestier, 525 So.2d 139 (La.App. 3rd Cir.1988), citing Bordelon v. Bordelon, 390 So.2d 1325 (La.1980). In the case sub judice, the trial court was asked to modify a prior custody decree which was based on an agreement between the parties. As such, the prior decree was not a "considered decree". This distinction is important inasmuch as it determines the burden of proof which the moving party must meet to have the prior custody decree changed. In Lindner v. Lindner, 569 So.2d 173 (La.App. 1st Cir.1990), our brethren of the First Circuit summarized the law applicable as follows:
"When a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). However, where no considered decree of custody has been rendered, the `heavy burden' rule set forth in Bergeron does not apply. The test to be applied in such cases is best interest of the child. Milligan v. Milligan, 559 So.2d 6 (La.App. 1st Cir.1990); Stewart v. Stewart, 525 So.2d 218 (La.App. 1st Cir.1988); Meredith v. Meredith, 521 So.2d [793] at 796; Risher v. Risher, 511 So.2d 1220 (La.App. 2nd Cir.1987)." Lindner, supra, at pg. 175.
It is clear that the test to be applied in this case is the best interest of the child. The trial judge recognized this as the correct standard in her reasons for judgment. She determined that it was in Brandon's best interest to spend more time with his father and his new wife, Kathy, in Alexandria. This determination is not challenged, however, relator suggests that this goal can be accomplished without alternating primary custody between she and Scott which is clearly detrimental to Brandon's best interest.
Custody decrees which alternate primary custody between parents living in separate cities have consistently been looked upon with disfavor. In Swope v. Swope, 521 So.2d 656 (La.App. 1st Cir.1988), the trial court implemented a custody plan which alternated the custody of a school-age child on a yearly basis between his mother in New Orleans and his father in Franklin. The First Circuit found this plan to be an abuse of discretion, reasoning as follows:
"... based on the particular facts of this case we find that the trial judge abused the much discretion vested in him by implementing a joint custody plan which alternates a school-age child between parents who live over 100 miles apart. As stated in LSA-C.C. art. 146(D), `"joint custody" shall mean the parents, shall, to the extent feasible, share physical custody of the children of the marriage.' (Emphasis added.) We *865 find that it is not feasible to require a child of this age to change schools and households every year. While this may seem like the only fair thing to do when the court finds that both parents are fit to care for the child, we are convinced it is not fair to the child to require him to adapt to the changes required when physical custody is alternated each school year, necessitating the child attend different schools. Therefore, we find the provision of the joint custody implementation plan providing for alternating physical custody of the minor child, every nine month school year, not to be in the best interest of the child."
Swope, supra, at 659. While conceding that divided physical custody is, under certain circumstances, a viable option, the court noted that split custody should be considered only when the parents live a short distance from one another and the child is not required to attend different schools.
In Swope, supra, the court cited with approval this circuit's case of Hull v. Hull, 499 So.2d 1037 (La.App. 3rd Cir.1986). In Hull, we observed that "stability and continuity are important considerations in determining what is in the best interest of the child". Hull, supra, at 1040, citing Everett v. Everett, 433 So.2d 705 (La.1983). The plan at issue in Hull split the primary custody of the child equally between his father in Pineville and his mother in Alexandria. The arrangement required the child to switch schools at the mid-point of the school year. We held that this arrangement was not in the child's best interest, reasoning that "... [i]t is disruptive enough to take an elementary age child from a school to which he is accustomed and force him into a totally new school environment even once. Few would dispute that forcing him to change schools twice every year would be an educational calamity." Hull, supra, at 1040.
"Joint custody" does not mandate a 50-50 sharing of physical custody. The joint custody plan should be designed to assure a child of frequent and continuing contact with both parents. The nine month-three month plans are desireable when the parents live in different cities. See Meylian v. Meylian, 478 So.2d 218 (La.App. 3rd Cir.1985), holding that a six month alternating custody plan was not in the best interest of the children. Generally, stable school attendance should not be sacrificed for an objective of 50-50 sharing. Waits v. Waits, 556 So.2d 215 (La.App. 2d Cir.1990).
In Allen v. Allen, 484 So.2d 277 (La.App. 3rd Cir.1986), the father appealed a joint custody decree which granted the mother primary custody except for one summer month, every other weekend, and alternating holidays spent with the father. The children at issue were two boys, ages five and seven. On appeal, we amended the judgment, reasoning that the trial court did not give sufficient weight to the importance of boys spending more time with their father in light of their need for a "male role model" to play an increasingly important function in their development. Allen, supra, at 279. We amended the trial court's decree to grant the mother primary custody of the boys during the nine month school period, with the father having visitation rights three weekends out of every month. This arrangement applied in reverse during the summer months. The trial court in the case sub judice recognized the need for Brandon to spend more time with his father as a "male role model". However, instead of increasing the frequency of visitation in favor of Scott, the court instead chose to implement an alternating custody plan which, for the reasons given in the cited jurisprudence, is clearly not in the best interest of the child. This we find was clear error.
The record reflects that Brandon is extremely well adjusted despite some distress caused by the divorce of his parents. Dr. Linowski, a clinical psychologist who tested Brandon, testified that the child internalizes this distress, which manifests itself in minor physical ailments such as headaches. Despite these minor problems, he exhibits emotional stability and control. In his opinion, Brandon clearly portrayed a need to spend more time with his father. He *866 also felt that it was important that Brandon have much more access to Scott because, at his age, he needs a positive male role model. The trial judge agreed with this conclusion while, at the same time, crediting much of the child's well adjusted behavior to the mother's parenting skills. Brandon appears to be a friendly, well adjusted boy. Despite some physical problems, he participates in a wide variety of sports activities such as t-ball, soccer, and basketball. He is a very good student and gets along well with his friends and teachers.
Scott has been remarried for approximately one and one-half years and has one recently born child of this marriage. He owns his home in Woodworth near Alexandria which is situated on three and one-half acres of land. Brandon has several friends in the area surrounding his father's house and he enjoys visiting his father and stepmother very much. Scott owns a utility construction company which does work primarily for municipalities in the state of Louisiana. He earns a very stable income and, although he has projects pending throughout the state, he is rarely away from home overnight. There is no indication in the record that Scott's relationship with Brandon is anything but close and loving. He testified that Brandon has never been a discipline problem. He stated that Dianna was consistently uncooperative about visitation and was not forthcoming about Brandon's educational progress.
Dianna has been Brandon's primary custodial parent for approximately two years. She presently works for her father who operates several fast food franchises. Since she works in a family business, her hours are flexible, allowing her to pick Brandon up from school every afternoon. She has had several boyfriends since the divorce. All of them have gotten along extremely well with Brandon. She has been discreet with these men in Brandon's presence and none of them have spent the night in her home while Brandon was there. Dianna lives in what appears to be a very nice townhouse complex in Shreveport. She testified that Brandon has several friends in the complex and that he likes her present boyfriend, Scott Jacobs. Jacobs stated that he and Dianna have discussed marriage plans. Dr. Linowski testified that Dianna's relationships with these men have not had an adverse effect upon Brandon. He attributed this to her discreet conduct when they are in Brandon's presence. The record reveals that Dianna has been somewhat dependent upon her parents for the support of herself and Brandon over and above that which Scott is required to provide. She admitted that, when Brandon needs something, Scott is never hesitant to pay for it if asked.
Dr. Vigen, a child and school psychologist, testified that Brandon appeared very positive about both homes. She attributed his stress to environmental sources and his need to remain in control. She stated that it is very positive for Brandon to see his mother in a good relationship. He also expressed to her a desire to spend more time with his father.
Dr. Simoneaux, a psychologist who examined both Dianna and Scott, concluded in his report that there was no compelling reason to change the present custody arrangement. He stated that there was nothing glaringly wrong with either parent and that he could discern no reason to conclude Scott's home to be more stable than Dianna's home. Dr. Simoneaux acknowledged that he would have to defer to Dr. Linowski's opinion on the issue of Brandon's desire to spend more time with his father. The trial judge, in her discretion, chose not to attribute a great deal of weight to the testimony of the experts, noting that it was the result of limited examinations of the parents and Brandon.
The record clearly supports the trial judge's conclusion that Brandon wants to and needs to spend more time with his father. We feel that this is in his best interest. It is especially important at his age and will become increasingly important as he grows older. However, the trial court's plan of implementation is clearly an abuse of discretion insofar as it alternates primary custody between Scott and Dianna every third year. This arrangement is in *867 clear contravention of the principles enunciated in Swope, supra, and Hull, supra. It will no doubt cause an unnecessary disruption in Brandon's educational and social development.
As in Swope, it appears that Scott and Dianna are good parents and both are fit to care for Brandon. The record reflects that Brandon is a well adjusted child and does well in school. The record reflects and the trial court concluded that much of Brandon's well adjusted behavior should be credited to his mother's parenting skills. Considering this finding, we conclude that a change in the existing joint custody plan, except to the extent hereafter suggested, is unwarranted and is not in the child's best interest. Although Brandon's need for more frequent contact with his father has been demonstrated and should be implemented, this object can be accomplished by generously increasing the periods of visitation allowed to Scott.

DECREE
For these reasons, the judgment of the trial court is reversed insofar as it granted Scott Lee Stanley primary custody for the 1991-92 school year and the 1994-95 school year and primary custody from June 1997 until Brandon reaches the age of majority. The custody decree, signed October 17, 1989, which was in effect prior to the trial court's modification is hereby reinstated. This matter is remanded to the trial court for fixation of a schedule for physical custody of Brandon for the summer periods, holidays, and weekends consistent with the views expressed herein.
REVERSED AND REMANDED.