831 So.2d 1060 (2002)
Scott G. ALEXANDER
v.
Sharon ALEXANDER.
No. 02-683.
Court of Appeal of Louisiana, Third Circuit.
November 13, 2002.
*1062 Lisa Kay Nelson, Williams & Nelson, Leesville, LA, for Plaintiff/Appellee Scott G. Alexander.
Bradley O'Neal Hicks, Dowden & Hicks, Leesville, LA, for Defendant/Appellant Sharon Alexander.
Court composed of HENRY L. YELVERTON, SYLVIA R. COOKS, and BILLIE COLOMBARO WOODARD, Judges.
YELVERTON, J.
This appeal concerns child custody and temporary spousal support. Sharon Alexander appeals claiming that the trial court erred in granting her and Scott Alexander the joint care, custody, and control of their minor children, with each of them being designated co-domiciliary parents. Her main complaint is that the trial court awarded evenly split custody of the couple's two young children. The trial court gave Sharon custody for 182 days and Scott custody for 183 days. Sharon lives with her parents in California, and Scott lives on post at Fort Polk in Louisiana. She also claims that the trial court erred in finding that Scott should not have to pay interim spousal support as long as he pays the couple's substantial community obligations. We find merit in her assignment regarding split custody, but find no merit in her other contentions. Therefore, for the reasons given below, we reverse in part and affirm in part.
Scott and Sharon were married on August 24, 1995, in Elizabethtown, Kentucky. They moved to Vernon Parish in Louisiana, in July of 2000 when Scott, a Staff Sargent in the U.S. Army, was assigned to Fort Polk. Two children were born of the marriage. Kenneth, the oldest, is now three, and Christy is just over one. On December 6, 2001, Sharon, fed up with Scott's uncontrolled spending, left the family home in Fort Polk and took the children to her former home in Los Angeles. Both Scott and Sharon are originally from Los Angeles, and both of their parents and extended family members still live there. Since leaving Louisiana, Sharon and the children have lived there with her parents.
Less than a week after Sharon left, Scott sued for divorce. At a hearing on the matter, custody was also an issue. Following a short trial, the court found that despite the considerable distance between the parents, custody of the children should be divided between them, 183 days a year to Scott and 182 days a year to Sharon. The extra day in Scott's favor was to allow him to retain family housing on post. Additionally, the trial court ruled that Scott would not be forced to pay interim periodic support to Sharon as long as he continued to pay the community's considerable outstanding debts.
Sharon's brief on appeal, as stated earlier, mainly attacks the alternating equal custodial periods. Scott has not favored us with an appellate brief.

SPLIT CUSTODY IN EQUAL INCREMENTS
We find that the trial court clearly abused its discretion in ordering that the parents share physical custody in alternating six-month increments. In custody cases, the paramount consideration is always the best interest of the child. La. Civ.Code art. 131; Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). "The two parties stand on equal footing at the outset of trial, and the court determines the best *1063 interest of the child based on the relative fitness and ability of the competing parties in all respects." McGee v. McGee, 98-1911, p. 6 (La.App. 3 Cir. 10/13/99), 745 So.2d 708, 712 (citing Warren v. Warren, 617 So.2d 545 (La.App. 2 Cir.), writ denied, 620 So.2d 846 (La.1993)). Consequently, each case must be decided on the basis of its particular facts and circumstances by weighing and balancing those factors favoring and opposing custody of the respective parents. Id. The factors to be considered by the trial court in making a custody determination are set out in Louisiana Civil Code Article 134, including:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The standard of review on appeal of a trial court's custody decision is a clear showing of abuse of the trial court's discretion. Williams v. Bernstine, 626 So.2d 497 (La.App. 3 Cir.1993). When considering all of these factors, we find that the trial court abused its discretion in splitting the physical custody of the children into alternating six-month periods.
Joint custody does not require an equal sharing of physical custody. Nichols v. Nichols, 32,219 (La.App. 2 Cir. 9/22/99), 747 So.2d 120; Meylian v. Meylian, 478 So.2d 218 (La.App. 3 Cir.1985). The legislative scheme providing for joint custody of children mandates substantial time rather than strict equality of time. See La.R.S. 9:335; Nichols, 747 So.2d 120. While the 1700-mile distance between them will unfortunately prevent one of the parents from seeing the children frequently, equal time is not required by law.
The distance between Fort Polk and Los Angeles is over 1700 miles. Switching homes every six months does not lend itself to stability for young children, especially if the children are effectively prevented from seeing the non-custodial parent for six months at a time. Continuity and stability of environment are important to consider in child custody matters. Ezell v. Kelley, 535 So.2d 969 (La.App. 2 Cir.1988).
In Evans v. Lungrin, 97-541, 97-577 (La.2/6/98), 708 So.2d 731, the Louisiana Supreme Court found that a trial court's *1064 award of four-month, alternating, split physical custody was not in the best interest of the two-year-old child. The evidence in that case revealed that such an arrangement between a parent who lived in the state of Washington and a Louisiana parent deprived the child of a sense of stability. The supreme court also found that transporting the child back and forth between the states of Washington and Louisiana at four-month intervals would not be in her best interest. It found that the trial court had abused its discretion and remanded the case for the rendering of a new implementation order, the appointment of, and evaluation by, an independent expert, and the designation of a domiciliary parent.
One of the factors enumerated in Louisiana Civil Code Article 134 for determining the best interest of the child is the distance between the respective residences of the parties. The child's age, the parents' situations, and other circumstances relevant to the particular custody dispute must be considered. Swope v. Swope, 521 So.2d 656 (La.App. 1 Cir.1988). The Swope court found that the trial judge abused the much discretion vested in him when he implemented a plan that alternated custody of a school age child on a year-by-year basis between parents who lived over 100 miles apart.
In Stanley v. Stanley, 592 So.2d 862 (La.App. 3 Cir.1991), writ denied, 592 So.2d 1339 (La.1992), the child was seven years old. The trial court's plan of implementation alternated primary custody between the father and the mother every third year. On appeal, this was found to have been a clear abuse of discretion. This court found that this would "cause an unnecessary disruption in [the child's] educational and social development." Id. at 867.
In Templeton v. Templeton, 98-2503 (La.App. 1 Cir. 4/1/99), 730 So.2d 1070, the trial court ordered a four-and-one-half year old child to spend three months at a time with each parent, alternating between Louisiana and Minnesota. The appellate court found this was an abuse of discretion. One of the factors was that the child was attending kindergarten in Minnesota and the alternating equal three-month custodial periods with each parent would interrupt her kindergarten development. There was expert testimony regarding the need for stability at this age and that it would be very confusing to a child who has moved 1,300 miles away in a year and established a residence to change residences again with a different domiciliary parent.
The first circuit revisited the case after remand. Templeton v. Templeton, 00-0536 (La.App. 1 Cir. 12/22/00), 774 So.2d 1257. Finding that the child was residing primarily with the mother in Minnesota, the court designated her as the domiciliary parent. The trial court had ordered liberal visitation with the father in Louisiana, including most holidays. Noting that La. R.S. 9:335(A)(2)(b) and La.Civ.Code art. 136(A) required that the benefit from the child's contact with both parents must be balanced with the need for a stable home base consistent with family and friends, the appellate court decided that the problems and expense attendant upon that much travel made the trial court's visitation order unreasonable and not in the best interest of the child. Also, the child needed vacation and holiday time at home in Minnesota. The court accordingly revised the visitation schedule extensively.
In the present case, there was no factual basis to establish that the 50-50 custody plan imposed by the trial court was in the best interest of these very young children. There was no expert testimony *1065 elicited at the trial, and nearly all of the evidence pertinent to child custody came from the testimony of the two parents. Both parents are originally from Los Angeles, and their parents, the children's grandparents, continue to reside there. There was testimony that both grandparents and the mother's siblings are closely involved with the children. This is especially the case with the mother's siblings and parents, with whom the mother was living at the time of the trial. Neither Scott nor Sharon have any family members in Louisiana.
Both testified that the other was a good parent. Scott emphasized that 95% of the time, Sharon was an "excellent mother." After the children were born, she never worked, staying at home with the children at all times. Sharon had nothing bad to say about Scott except his inability to manage money. There is no doubt both parents love the children. Sharon testified, "I know they miss their Dad so much. They would love to see their Dad."
The major cause for the divorce appears to have been money. Scott admitted that the majority of their disagreements during the last two years of their marriage was over him spending money, plus "[s]he was mad just because I should sit at home and dohave nothing else outside of the house," such as eating lunch with friends rather than coming home for lunch. Sharon, who is of Cambodian and Chinese descent, stated that she disliked money problems, because they would have to call her parents or his for help.
Often in his testimony, Scott repeated that Sharon was an excellent mother "95 percent of the time." He explained Sharon's five percent maternal deficiency by reference to an event that occurred on the night of November 26, 2001. Army Second Lieutenant Shelley Rae Hanchey testified about what happened. She was in charge of an M.P. detail on the post that night, and she received a call from a neighbor that a child was crying in a backyard. Responding to the call, she went to the Alexander quarters and knocked on the door. Sharon answered the door and, when questioned, readily explained that her son had had a tantrum and she sat him outside for a couple of minutes in the backyard where he normally played, to finish his tantrum. She sat near him, watching him through the screen door, and when he finished his tantrum, she took him back upstairs. When Lieutenant Hanchey went upstairs to check on the child, she found him sitting up in his bed smiling, and he "kinda thought everything was pretty funny having a whole bunch of army people showing up in his bedroom in the middle of the night." Although Lieutenant Hanchey scolded Sharon for doing a "time out" that way, she stated that the child was laughing and "in good shape." Scott slept through this event and did not know about it until the M.P.s woke him up and told him. In its reasons for judgment, the trial court did not seem to be too concerned about this incident, nor are we. While the remedy for the little boy's tantrum is unusual in this country, it apparently worked. Sharon neither harmed nor intended to harm the child in any way. She was no more than two feet away from him, watching him closely through the screen door, and for a short time. What she did was a discourtesy to the neighbors, but it did not result in harm to the child.
Scott had only vague plans for how he would manage his custodial responsibilities. He testified that if he could get custody one day more than half a year, he could continue to live in the barracks on the post. His duty hours would require him to leave the kids from 6:00 a.m. to 5:00 p.m. on work days. His company commander testified that he would be responsible *1066 for setting up a family care plan for Scott if Scott was given custody. This meant a post nursery. Scott's commanding officer stated that every three months, soldiers are required to spend a week or two in the field, meaning they are away from home day and night. He stated also that Sergeant Alexander is a deployable soldier, meaning he was subject to being sent anywhere in the world. It is obvious that for six months under this custody plan, for the most part of the daylight hours these children will be in the care of complete strangers. We fail to see how this can possibly be in their best interest.
Sharon, on the other hand, testified that, although she planned to get a job, she could leave the children with her parents or Scott's parents during the day. She also enjoyed the help of her older siblings living with her parents. Sharon is able to provide a more stable environment for the children. She has been the primary care-giver to the children throughout their young lives. We find it to be in the best interest of the children to make her domiciliary parent with sole physical custody of the children, subject to reasonable visitation for Scott.

JOINT CUSTODY
We do not agree with Sharon's claim that the trial court abused its discretion in finding that the parties should share joint custody of the minor children. The trial court did not err in granting joint legal custody. Distance between the respective residences of the parties is a factor to be considered in determining the child's best interest in custody disputes. La.Civ.Code art. 134. Nonetheless, as noted in Evans 708 So.2d at 739.
[W]ith the new decision-making rules and the ability of parents to communicate instantly when necessary by telephone or other means, the distance separating the parents assumes less importance in determining whether sole legal custody is a better custody arrangement than joint legal custody. Removal of a parent from Louisiana should not, of itself, constitute a sufficient reason to terminate the joint legal custody arrangement.
Scott can still participate in making decisions concerning his children, and the mere fact that Sharon has moved out of this state is not sufficient reason to grant her sole legal custody of the children. The award of joint legal custody of the children is, therefore, upheld.

ALIMONY PENDENTE LITE
Sharon claims that the trial court erred in ruling that Scott did not have to pay temporary periodic support to her as long as he continues to pay the community debts acquired during their marriage. We find no error.
Pending a final support award, alimony pendente lite may be awarded by a court based on the needs of the party seeking the support, the ability of the other party to pay, and the standard of living of the parties during the marriage. La.Civ.Code art. 113. "The purpose of alimony pendente lite is to temporarily provide for the spouse who does not have sufficient income for his or her maintenance and to preserve the status quo insofar as maintenance and support are concerned." Mouton v. Mouton, 514 So.2d 528, 530 (La.App. 3 Cir.1987). The determination of alimony pendente lite is based largely upon the resolution of two issues. The primary inquiry is whether the claimant spouse has sufficient income to maintain the standard of living that existed prior to filing for divorce. Skannal v. Skannal, 25,467, 26,030 (La.App. 2 Cir. 1/19/94), 631 So.2d 558, writ denied, 94-697 (La.5/13/94), 637 So.2d 1067. The second *1067 inquiry concerns whether the defendant spouse has sufficient means to provide the requisite alimony pendente lite. "The determination of means with which one spouse is to satisfy the alimony obligation toward the claimant spouse is not based solely on income but also on any resource from which the wants of life may be supplied, and the entire financial condition of the spouse owing such obligation must be examined." Desormeaux v. Montgomery, 576 So.2d 1158, 1159 (La.App. 3 Cir.1991) (quoting Mouton v. Mouton, 514 So.2d 528, 530 (La.App. 3 Cir.1987))(emphasis ours).
In determining alimony pendente lite, the trial court is vested with wide discretion and only manifest abuse of this discretion will move this court to disturb an award of the trial court. Id.; Lamb v. Lamb, 427 So.2d at 899 (La.App. 3 Cir. 1983). Accordingly, the trial court's rulings on alimony issues are entitled to great weight. Hester v. Hester, 98-2220 (La. App. 4 Cir. 1/19/00), 752 So.2d 269, writ denied, 00-521 (La.5/5/00), 756 So.2d 314.
In making its determination, the trial court considered the fact that the wife was receiving monetary help and free board from her parents in Los Angeles. The court also considered the substantial community debts that Scott would have to pay. The trial court found that as long as he alone was paying these debts, he would not have sufficient means to pay temporary alimony. We find no abuse of discretion in this determination. Therefore, the ruling of the court will remain undisturbed.
For the reasons assigned, we reverse the judgment insofar as it awards equal alternating physical custody in six-month increments to each parent. We render judgment awarding Sharon Alexander sole physical custody of the children. We award Scott Alexander reasonable visitation, but because there is no evidence in the record based on which we can determine a plan of visitation, we remand the matter to the trial court for that determination. In all other respects, the judgment is affirmed.
Costs of this appeal are to be split equally between Scott and Sharon Alexander.
REVERSED IN PART; RENDERED; AFFIRMED IN PART; REMANDED.
WOODARD, J., concurs in the result.