914 So.2d 662 (2005)
Timothy L. COLVIN, Plaintiff-Appellee
v.
Karla K. Hatten COLVIN, Now Pagans, Defendant-Appellant.
No. 40,518-CA.
Court of Appeal of Louisiana, Second Circuit.
October 26, 2005.
*664 Ann B. McIntyre, Winnsboro, for Appellant.
Dawn Hendrix Mims, for Appellee.
Before WILLIAMS, GASKINS and DREW, JJ.
GASKINS, J.
In this child custody case, the mother appeals from a trial court judgment which requires an eight-year-old child to alternate between his parents, who live in different states, on a rotating annual basis. We reverse and render.

FACTS
Karla Hatten and Timothy Colvin were married in 1995. Their son Christian was born in April 1997. The parents separated in August 1997.
In October 1997, the father filed a petition for divorce in Franklin Parish, where both parents resided. He requested joint custody of the child with the mother being named domiciliary parent and the father having alternating weekend visitation; the mother agreed. This was granted in an order signed on October 17, 1997. When the judgment of divorce was signed on March 12, 1998, this custody arrangement was continued.
In February 1999, the father filed a rule to show cause requesting the implementation of a more detailed custody plan which retained the mother as domiciliary parent. Pursuant to a stipulated judgment signed on June 16, 1999, the mother remained domiciliary parent and the father received specified visitation.
Both parents have remarried, and each has a child with the new spouse. The father resides in Rayville, Louisiana, in Richland Parish, while the mother currently lives in Southaven, Mississippi.
Before eventually ending up in Mississippi, the mother moved several times. In April 2003, the father filed an objection to the mother relocating from West Monroe, Louisiana, to West Helena, Arkansas, in connection with the stepfather's job with Wal-Mart. In June 2003, the father filed a rule to modify custody, seeking to be named domiciliary parent due to the mother's moves. However, the parents eventually stipulated that the mother would remain the domiciliary parent and that she could move to West Helena, Arkansas.[1] Later, the stepfather accepted a Wal-Mart promotion in Southaven, Mississippi.
In December 2004, the father filed an objection to the proposed move to Mississippi and sought to be named domiciliary parent. In her response, the mother asserted that the new location would be only 65 miles from her former Arkansas residence.
Trial was held on February 10, 2005, and May 6, 2005. Among other evidence, the trial court considered the report of Dr. E.H. Baker, the psychologist it appointed to examine the child. According to Dr. Baker, the mother's moves so far had not adversely affected the child. He suggested that the child remain with the mother and that the father's visitation continue as before. However, the doctor further recommended *665 that, should the mother and stepfather move yet again, the child should be sent to live with his father.
Given the distance between the parents' homes and the desire of both parents to participate fully in the child's upbringing, the trial court awarded joint custody with the parents alternating years. The period of domiciliary custody would run from the weekend following July 4 of one year to the weekend following July 4 of the next year, with the non-domiciliary parent having alternating weekend visitations, spring break and the Thanksgiving, Christmas and Easter holidays. The domiciliary parent is prohibited from moving during the year he or she has custody. The court acknowledged that such an approach was "experimental" and had the potential to be difficult. Judgment was signed June 13, 2005.
The mother appeals.

LAW
The paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131; Evans v. Lungrin, XXXX-XXXX (La.2/6/98), 708 So.2d 731.
In cases where the original custody decree is a stipulated judgment and the rule of Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), is inapplicable, the party seeking modification must prove (1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child. Evans v. Lungrin, supra.
In determining the best interest of a child in custody cases, there must be a weighing and balancing of factors favoring or opposing custody in respective competing parents on the basis of evidence presented in each particular case. Hoskins v. Hoskins, 36,031 (La.App. 2d Cir.4/5/02), 814 So.2d 773.
According to La. C.C. art. 134, the relevant factors to be considered in determining the best interest of the child may include the following:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
*666 The court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. The court is not bound to give more weight to one factor over another, and when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. Hoskins v. Hoskins, supra. Moreover, the factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. McIntosh v. McIntosh, 33,908 (La.App. 2d Cir.8/31/00), 768 So.2d 219.
Continuity and stability of environment are important factors to consider in determining what is in the child's best interest. A change from a stable environment should not be made absent a compelling reason. Ketchum v. Ketchum, 39,082 (La.App. 2d Cir.9/1/04), 882 So.2d 631.
Regarding decrees of joint custody, La. R.S. 9:335 provides in pertinent part as follows:
A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2) (a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
The trial court's finding that joint custody is in the best interest of the child does not necessarily require an equal sharing of physical custody. Collins v. Collins, 36,629 (La.App. 2d Cir.10/23/02), 830 So.2d 448. Substantial time rather than strict equality of time is mandated by the legislative scheme providing for joint custody of children. Jones v. Jones, 38,790 (La.App. 2d Cir.6/25/04), 877 So.2d 1061.
Underlying the trial court's great discretion in child custody cases is its opportunity to better evaluate the credibility of witnesses. Accordingly, the trial court's determination of custody issues is afforded great weight and will not be disturbed on appeal absent an abuse of discretion. Hoskins v. Hoskins, supra.

DISCUSSION
The first issue before us is whether there has been a material change of circumstances affecting the child's welfare since the last stipulated custody decree was entered. A review of the trial judge's oral reasons for judgment reveals that he made no specific finding of a material change of circumstances. Our examination of the record shows that no such change has occurred.
When the mother first moved to Arkansas, her family lived in Marvell. Thereafter, they moved a short distance to West Helena, Arkansas. They later moved to Southaven, Mississippi. The distance between the mother's current home and the father's residence is not appreciably greater than when she first moved out of Louisiana. In Bercegeay v. Bercegeay, 96 0516 (La.App. 1st Cir.2/14/97), 689 So.2d 674, the court held that an intrastate move by one of the parents was not per se sufficient criterion to establish a change of circumstance. We believe that the same may be said when an interstate move is not of significant distance.
However, even assuming arguendo that there was a material change of circumstances since the last stipulated custody *667 degree, we also find that the proposed annual rotation of custody is not in Christian's best interest.
Review of the factors under La. C.C. art. 134 indicates that the parents are equal in almost all respects. Both are capable and loving parents. Both are mentally and morally fit. They both enjoy stable family relationships and regularly attend their respective churches. However, an equal sharing of custody is prevented by the distance between the parents' homes.
Christian has a strong, loving relationship with each of his parents. The boy gets along well with both stepparents. He also enjoys healthy relationships with his half-siblings and his extended family on both sides.
After moving to Arkansas, Christian attended Marvell Academy in Marvell for first grade. His grades were A's and B's. For the first half of second grade, he attended DeSoto Academy in West Helena; his grades were mostly B's with a few A's. After moving to Mississippi, he began attending DeSoto Central Elementary School in Southaven. His grades ranged from A's to high B's there.
Christian has been receiving treatment from Dr. Sham Haroon. He was first seen by her at the suggestion of a second grade teacher who felt he was at risk for "academic lack of success." Dr. Haroon's records describe the boy as suffering from ADD and anxiety, and the doctor prescribed Adderall. The doctor's notes refer to him as "an anxious kid" with "high anxiety traits." The notes also mention that when the boy first moved to Arkansas he had a hard time adjusting to a new school and he missed his father, friends and grandparents. In November 2004, Dr. Haroon observed that Christian was stressed by the custody battle between his parents but felt he would do fine in his new school. In January 2005, she noted the mother's report that Christian had adjusted well to his new school and that his grades had improved.
The court appointed Dr. E.H. Baker, a psychologist, to evaluate the boy. His interview with Christian indicated that the child was "not overly concerned about the moves or the changes in schools." Christian denied being bothered by the moves. According to the child, another move would be "okay" but so would staying where he was presently living. He indicated that he would rather live with his mother and stepfather because they were "more fun" than his father and stepmother. Dr. Baker found no areas of concern. The behavioral assessments indicated that Christian was not being adversely affected by the mother's moves. Dr. Baker recommended that the boy continue to live with his mother as domiciliary parent and continue the current visitation with the father. In the doctor's opinion, changing domiciliary custody at this time would require changes that would likely be more disruptive to the child than leaving his situation alone. However, should the mother move again and the move necessitate a change in schools, Dr. Baker suggested that it would "likely be appropriate" for the father to have domiciliary custody.
The trial court chose to "split the baby in half" as an "equitable solution" for two equally competent parents, both of whom love their child and want to raise him. However, we find that alternating custody of this child on an annual basis would not be in his best interest. This arrangement would require Christian to be completely uprooted every single year from one parent, as well as his home, school, church and friends. It has the potential of causing a substantial disruption in his educational and social development. Admittedly, Christian has never attended the *668 same school two years in a row due to the mother's moves to accommodate the stepfather's career. However, we note that the child is only eight years old and still in his early school years.
In many situations, courts have found alternating custody arrangements were not in the best interest of the children involved. Among the reasons given were the disruptive effect upon the child, the lack of stability, and the potential "educational calamity" of changing schools. See Hull v. Hull, 499 So.2d 1037 (La.App. 3d Cir.1986); Swope v. Swope, 521 So.2d 656 (La.App. 1st Cir.1988); Stanley v. Stanley, 592 So.2d 862 (La.App. 3d Cir.1991), writ denied, 592 So.2d 1339 (La.1992); Evans v. Lungrin, supra; and Alexander v. Alexander, 2002-683 (La.App. 3d Cir.11/13/02), 831 So.2d 1060.
While the mother's past moves have undoubtedly been disruptive, the child has had at least the stability and continuity of remaining in her care. Although the father has actively participated in his upbringing, Christian appears to have been primarily in the mother's care since infancy, and she has provided an adequate environment. At present, she does not work outside the home and is available to him at virtually all times. The father, however, works late into the evening more than half the week, leaving Christian to be cared for by his stepmother.[2] We note that the trial judge's concern about the impact of frequent moves on Christian would not be alleviated, and could possibly be exacerbated, by this alternating custody plan.[3]
Consequently, we reinstate the prior joint custody arrangement in which the mother was designated the domiciliary parent and the father was granted regular visitation with the child. In order to minimize disruption of the child's education, this reinstatement of the prior custody plan shall go into effect December 30, 2005.[4]

CONCLUSION
The judgment of the trial court is reversed. The January 2005 joint custody judgment is reinstated.
Costs of this appeal are assessed against the father.
REVERSED AND RENDERED.
NOTES
[1] This stipulated judgment was rendered in September 2003 but not signed until January 2005.
[2] At the time of trial, the father worked 1:00 p.m.-9:00 p.m., Wednesday through Sunday. The father anticipated a change in hours to 10 hours a day, four days a week.
[3] However, like Dr. Baker, we are concerned that a continuation of the mother's pattern of moving would be detrimental to the child and would warrant re-evaluation of his custody.
[4] If the semester does not end before the new year, then this change may need to be implemented at a later time. If the parties are unable to agree, then judicial intervention may be necessary.