420 So.2d 704 (1982)
Thorre G. TERJERSEN
v.
Mary Louise Yancey, wife of TERJERSEN.
No. 13238.
Court of Appeal of Louisiana, Fourth Circuit.
September 30, 1982.
*705 Richard J. Meunier, Meunier, Martin & Meunier, New Orleans, for plaintiff-appellant.
Terrence J. Lestelle, New Orleans, for defendant-appellee.
Before REDMANN, C.J., and AUGUSTINE and LOBRANO, JJ.
REDMANN, Chief Judge.
The Supremacy Clause, U.S. Const. Art. VI, denies to a state legislature and to a state court the power to re-order the distribution of federal social security benefits that the Congress of the United States has ordained in 42 U.S.C. 402. The Supremacy Clause equally prevents a state court's overriding the exemption of social security benefits from "execution, levy, attachment, garnishment, or other legal process" that the Congress has decreed in 42 U.S.C. 407.
In addition to reducing on state law grounds, we therefore further reduce, as constitutionally impermissible, an award of $800 monthly alimony against a retired husband who at trial time had virtually no means to pay it save his $604.70 social security benefit and a $61.78 private pension (that was to increase to $475 four months thereafter).
The award, for $800 plus use of the community's three-bedroom house as alimony pendente lite, cannot be sustained on the basis either that the husband has proven assets constituting "means" within La.C.C. 148 or that the husband is obliged by law to go back to work to obtain income under the circumstances of this case.
The only proof of assets is a 1980 income tax return showing $909 interest income that year (1979 was $398), of which 94% came from two financial institutions at which total balances were only $1,948.77 shortly before trial, plus the husband's admission of "13 shares in gold coin" (not further described; the tax return showed $35 total dividends) and about $800 in silver dimes. He and three others had started a marine surveying company but it was unsuccessful. His wife claims he had more coins (he proved several sales of coins), and she also claims he inherited three houses in Norway without further detail or support (he testifies he has "no other place" than his New Orleans residence). The New Orleans residence is not available as a source from which to pay the cash portion of the alimony because the award obliges the husband to let the wife reside there. That proof establishes available assets of only some $2,750 plus the "13 shares" and any over-face-value of the dimes. That proof does not suffice to support a continuing award of $800 a month beyond three or four months.
The spouse who claims entitlement to alimony pendente lite bears the burden of proving entitlement under C.C. 148. *706 Now gender-neutral, since its amendment by La. Acts 1979 No. 72, art. 148 reads:
If the spouse has not a sufficient income for maintenance pending suit for separation from bed and board or for divorce, the judge may allow the claimant spouse, whether plaintiff or defendant, a sum for that spouse's support, proportioned to the needs of the claimant spouse and the means of the other spouse.
The amendment making art. 148 (and the permanent alimony law, art. 160) gender-neutral followed Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979), and La. Const.1974 art. 1 § 3, prohibiting unreasonable discrimination on the basis of a person's sex. Orr held a females-only alimony statute unconstitutional, although it left the states alternatives to remedy the unconstitutionality. Louisiana's permanent alimony law, C.C. 160, was thereafter decreed unconstitutional by the Louisiana supreme court in Lovell v. Lovell, 378 So.2d 418 (La.1979), because it provided alimony only for wives, only from husbands. Any earlier decisions favoring one sex over the other in alimony matters, on the basis of sex alone, are no longer controlling.
Under today's art. 148 either spouse may claim alimony pendente lite, and the proof of entitlement must meet the same standard whether the claimant is the wife or the husband. The claimant must establish the insufficiency of his or her own income and must establish the proportion of his or her needs to the other's means. Today, no rule, procedural, evidentiary, or substantive, can discriminate between spouses purely on the basis of their sex.
With these principles in mind we turn to the wife's argument that her now-retired, 65-year-old husband, with a history of about 50 skin cancers' being removed in recent years, should return to work at sea to provide for her. His earnings at sea have approached $30,000 a year in the past, and a return to those earnings would easily provide the $800 a month cash portion of the alimony award.
Some decisions under the former females-only alimony laws have obliged the husband to work, by imposing an award backed by the threat of imprisonment for contempt for failure to pay. Those decisions cannot all be dismissed as invalid instances of sex-discrimination. Often the circumstances have included the presence of young children in addition to a family history of the male spouse having been the breadwinner while the female spouse was the child-tender and housekeeper with little or no employment experience or qualification. In Zaccaria v. Beoubay, 213 La. 782, 35 So.2d 659 (1948), for example, there were three infants for whom the spouses had to care, and presumably the spouse who discharged this obligation was the female spouse, while the male spouse ("a butcher by trade and a gambler by preference") apparently had provided the financial necessities. A more recent example is Sykes v. Sykes, 308 So.2d 816 (La.App. 4 Cir. 1975), in which the wife was pregnant and had two children already. In some other cases, however, there were no children, as in Viser v. Viser, 179 So.2d 672 (La.App. 2 Cir. 1965), and Rakosky v. Rakosky, 275 So.2d 421 (La.App.), writ refused, 278 So.2d 508 (rejecting a husband's rule to reduce alimony on the basis that he had quit his $12,000 a year job). But we have found no case in which a husband who had reached an age justifying retirement was obliged to return to the work force or go to prison.
We accept as gender-neutral a rule that would require a healthy spouse, experienced or qualified for reasonable work, and not beyond reasonable retirement age, to go to work to support the other spouse not similarly situated. But, irrespective of whether such a rule still obtains in Louisiana today, the claimant spouse in our case has not shown that her own circumstances are such as to justify denying to her husband the ordinary right to retire from active work at age 65.
The record does not show the wife's age, but she is presumably under 62 because she is not receiving the social security benefits due to a wife at that age. She does show that she has not regularly worked during the 19 years of the marriage. She has no *707 young children, and she does not show any disability on the part of her 19-year-old daughter or herself (although the daughter does live with her and does not work). We see no unusual problem other than the fact that a person aged between 40 and 60 (more or less) without much work history would have difficulty in finding comfortable and well-paying employment.
That difficulty may well justify obliging such a person's capable spouse to pay alimony; see Ward v. Ward, 339 So.2d 839 (La.1976). We agree that the husband here ought, insofar as able, to pay alimony pendente lite to the wife, and we do not envision our reduction of the award as forcing the wife to work. But we do not agree that, by awarding $800 a month when the husband cannot pay that amount, the court may force the husband out of reasonable retirement and back to work.
The husband's social security benefits, if by him joined with his private pension, and the spouses' ownership of a suitable house (with mortgage note of only $200 monthly), would have provided them a reasonable lifestyle in retirement (especially after May, when the private pension becomes $475, and moreso after the wife reaches age 62 and receives a social security benefit of half of her husband's, 42 U.S.C. 402(b)). They would ultimately have had almost $1,400 a month besides the value of their community residence and their modest other assets.
At the time of trial, however, they had only the husband's social security benefit of $604.70, the pension of $61.78, the house, about $1,950 of savings, $800 in silver dimes, and "13 shares in gold coin" that presumably produced $35 in dividends. Beyond question those modest assets, whether the community's or the husband's, must be expended to provide for the needs of the spouses. Those assets, however, together with the initial total retirement income of $666.48 a month, would not provide $800 a month for each of the spouses indefinitely. There is no basis for allowing the wife both the community house and $800 a month without conceding that the husband may also lawfully expend $800 a month for his own necessities. On that basis, their combined allowable expenditures of $1,600 a month exceed income by about $933. That overexpenditure would consume $2,800 in three months. Judicial notice that silver coins are worth much more than face value, coupled with a reasonable guess at the value of "13 shares" that produce $35 dividends, would support a conclusion that $933 could be overexpended for a fourth month; but thereafter no appreciable assets would remain save the house.
Fortunately, at that time the private pension increases to $475, so that total income increases to $1,079.70, although no other assets save the house remain. But to then continue an award to one spouse of $800 monthly plus use of the house (even if that spouse were obliged to pay the $200 monthly mortgage note on the house) is not permissible under La.C.C. 148, for that constitutes an ignoring of the other spouse's needs and a disproportionate weighing of the claimant spouse's needs against the means available. We would therefore be obliged to reduce the monthly award to the wife as of May 1982 to about $540, assuming there were no other problem with continuing the award thereafter at that lower level.
There is a problem. The husband could not at that time pay the wife $540 without turning over to her part of his own social security benefit of $604.70, because he will then have no other source save the $475 private pension. We conclude that we have no power to order or to affirm an order that requires the recipient of social security benefits to pay any part of those benefits to another.
This court has recently ruled that, in view of the Supremacy Clause and 42 U.S.C. 407's exemption of social security benefits from legal process,
a state court has no jurisdiction or order, in effect, a payee of Social Security benefits to turn over part of those benefits to his children (themselves the recipients of benefits) and to enforce such an order by contempt proceedings.
*708 Washington v. Washington, 418 So.2d 748, (La.App. 4 Cir. 1982). The same reasoning applies to an order for alimony.
First, it is the Congress that has provided the social security trust funds through its power, and there can hardly be any contention that the Congress does not have the power to decide who should receive those funds and in what amount. The Congress has done so. In doing so, the Congress has not ignored the possibility that a wage-earning husband whose taxes contribute to those funds may, upon retirement, have a wife for whom it would be just to provide out of those funds. The Congress has provided for a wife, in 42 U.S.C. 402(b). Others may be wiser than the Congress and might devise an order of distribution of the social security funds more suitable than the order the Congress has provided. But it is the Congress that has the constitutional authority, rather than the individual judges of the 50 states (or of the United States). The Congress has provided that a wife, merely because a wife, does not receive a social security benefit based on her husband's earnings taxes until she reaches age 62. Others may believe that age too high, but it is not their power to substitute their judgment for that of the Congress.
Second, and perhaps more squarely to the issue, the Congress has provided in 42 U.S.C. 407 that social security benefits are exempt from "execution, levy, attachment, garnishment, or other legal process." An order to turn over social security benefits under penalty of imprisonment for contempt is legal process prohibited by § 407; Washington, supra.
Brown v. Brown, 32 Ohio App.2d 139, 288 N.E.2d 852 (1972), and Huskey v. Batts, 530 P.2d 1375 (Okl.App.1974), which merely followed Brown (see also Meadows v. Meadows, 619 P.2d 598 (Okl.1980), citing Brown and Huskey), reasoned that the purpose of § 407 was to protect the family unit against creditors, and that the wife's alimony claim was not that of a creditor and was therefore not barred by § 407.
The answer to those cases is Philpott v. Essex County Welfare Bd., 409 U.S. 413, 416-417, 93 S.Ct. 590, 592, 34 L.Ed.2d 608 (1973), reversing a state's seizure of retroactive federal disability benefits to recoup benefits the state had meanwhile provided, expressly rejecting the state's argument that the state was not the kind of creditor that § 407 intended to protect against:
But § 407 does not refer to any "claim of creditors"; it imposes a broad bar against the use of any legal process to reach all social security benefits. That is broad enough to reach all claimants, including a state.
. . . .
By reason of the Supremacy Clause the judgment is reversed.
The judgment appealed from is amended to provide alimony pendente lite to the wife in the amount of $800 a month until May 1982, and in the amount of $475 a month payable May 15, 1982 and on the 15th of each month thereafter.