451 So.2d 1198 (1984)
Charlene Remondet DUHE
v.
Brian Joseph DUHE.
Brian Joseph DUHE
v.
Charlene Remondet DUHE.
Nos. 84 CA 18, 84 CA 19.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 1984.
*1199 Daniel E. Becnel, Jr., Reserve, Becnel, Landry & Becnel, LaPlace, for appellee.
Philip P. Spencer, New Orleans, for appellant.
Before BOUTALL, KLIEBERT and BOWES, JJ.
KLIEBERT, Judge.
This is an appeal by Brian Duhe, the father, from a judgment on a custody rule filed by Charlene Remondet Duhe, the mother, in a consolidated separation and divorce suit. The judgment terminated a previous joint custody order and granted the sole custody of Lafayette Duhe, the seven year old minor child of the marriage, to the mother, with the father having the child for overnight visitations two weekends of each month.
On appeal, the father assigns as error the trial judge's failure to: (1) hold the divorce judgment invalid and declare the mother unfit for custody because she was a bigamist, and (2) follow the mandates of LSA-C.C. Article 146 before terminating the joint custody order. For the reasons which follow, we re-establish joint custody with modifications.
The marital litigation commenced with the mother's petition for separation based on cruel treatment. This led to a February 26, 1981 default judgment of separation which awarded custody of Lafayette Duhe to the mother.
On November 6, 1981, under a separate docket number, the father filed for a divorce based on adultery and as an incident *1200 thereto requested a hearing on the custody rule. The court signed an ex-parte order granting the temporary custody of the child to the father and set the custody rule for February 3, 1982. On that date, the wife filed a petition for divorce based on the expiration of one year from the rendition of the judgment of separation without a reconciliation between the parties. At the hearing, both parties recognized one year had not expired since rendition of the separation judgment, but each party consented in the request to the court to withhold rendering a judgment of divorce until after the expiration of the full year, i.e., a period of about three weeks. On April 19, 1982, the trial judge rendered judgment granting a divorce based on the wife's petition and gave custody of the minor child to the mother with visitation at specified times to the father. Thereafter, without reference to the April 19, 1982 judgment, on June 15, 1982, the trial judge signed another divorce judgment containing the same decrees as the April 19, 1982 judgment; except, that both parties were said to be at fault and, therefore, the judgment was being granted on the basis of mutual fault. (According to the transcript, the parties had stipulated to mutual fault at the February 3, 1982 hearing.)
Civil Code Article 146 was amended to establish the presumption: joint custody is to the better interest of the child. The amendment became effective on January 1, 1983. On January 19, 1983, the father filed a motion for joint custody pursuant to Civil Code Article 146. As a result, the court ordered the submission of joint custody plans by each parent. A hearing was held and evidence taken on March 8, 1983. Pursuant to the court's order, the father submitted a joint custody plan, but the mother did not. On May 18, 1983, the trial judge signed a judgment incorporating the father's joint custody plan into the judgment and ordered joint custody in accordance therewith. Under this judgment, during the school terms the child would reside with the mother on Monday, Tuesday and Wednesday and until he went to school on Thursday morning. On Thursday, Friday, Saturday and Sunday and until he went to school on Monday morning, he would reside with the father. During summer vacation, the child would reside with the mother and father for two weeks on an alternating basis. Under the plan, special provisions were made for holidays, which included Father's Day, Mother's Day, Thanksgiving, Christmas, Easter and Mardi Gras.
On June 8, 1983, approximately three weeks after the rendition of the May 18, 1983 judgment, the mother filed a motion entitled "Motion to Fix Times for Visitation and/or Joint Custody" requesting a change in the joint custody to be effective September 1, 1983, under which the custody would alternate from each parent every two weeks and on an alternating basis on specified special holidays.
In response the attorney for the father filed a pleading entitled "Exceptions" contending (1) the judgment granting joint custody was res judicata, (2) the joint custody was not given sufficient time to work, (3) the mother never submitted her own custody plan to the court, (4) the mother refused to discuss modifications of the joint custody order, (5) the plan submitted by the father and adopted by the court contained provisions for mediation or arbitration by persons skilled in the area of problem children before the parties could seek relief from the courts, and (6) there was no change in circumstances which justified a change in custody.
A hearing on the wife's motion was held on August 24, 1983. At the hearing, the trial judge elected to interview the child in chambers in the presence of the court reporter but excluding the parents and their attorneys. Although the trial judge refused to inform the parents or their attorneys of the substance of the child's responses, the interview was transcribed and a copy placed in the record for the appeal.
After the interview with the minor, the trial judge made the following observation:
"THE COURT:
For the purpose of the rule, I really don't think it would serve any purpose *1201 to call any other witness. I have heard the witnesses and they testified at length in other hearings, and I don't think either of them have anything that is revolutionary to bring to my attention. I will ask Counsel now, and I don't want further argument, but I will ask Counsel if they have anything further to add to Mr. Spencer's [the father's attorney] exception?"
Notwithstanding the court's observation, the father's counsel requested and was allowed to introduce the testimony of Dr. Margaret B. Koch, Ph.D., an expert in child psychology. She testified to an interview with the minor child (alone) and subsequent interview with the child and his father. She had helped to prepare the original custody plan and tried to favor the minor child's desire as to when he wanted to be with each parent.
According to the transcript, the ten year old child told the trial judge and Dr. Koch substantially the same thing. He loved both parents and wanted to spend time with both parents and preferred the apportionment of his time between the parents substantially in accordance with that provided for in the joint custody order.
Following the August 24, 1983 hearing, the trial judge, on September 23, 1983, rendered judgment vacating the joint custody, awarding custody to the mother and granting to the husband overnight visitations two weekends per month. This judgment is the subject of this appeal.
The divorce judgment of April 19, 1982 was not appealed and is not before us. The appellant's first assignment of error constituted an unpermissible collateral attack against the judgment of divorce. Sizeler v. Sizeler, 375 So.2d 122 (4th Cir.1979); Thibodeaux v. Duos, 343 So.2d 441 (3rd Cir.1977). Although we do not pass on the validity of the issue, appellant's remedy for an invalid judgment, if any he has, is an action in nullity. Consequently, the father's first assignment of error cannot be considered in this appeal.
With respect to the second assignment of error, we note the following: The motion filed by the mother on June 8, 1983 was not a motion to revoke the joint custody order, but rather, a motion to modify the order by increasing the time allotted to her under the joint custody order. Throughout the record, able counsel for the mother made reference to the fact the mother had no problem with "joint custody" and her purpose for being in court was simply to have a better apportionment of the child's out-of-school time between the parents.
Thus, the matter at issue in the trial court at the August 24, 1983 hearing was not the concept of joint custody, but rather, the mother's complaint that the time allotted to her during the school term was insufficient because the child was in school during most of the time his residency was allotted to her.
Civil Code Article 146 C(2) sets out the factors to be considered in rebutting the presumption in favor of joint custody as follows:
(2) The presumption in favor of joint custody may be rebutted by a showing that it is not in the best interest of the child, after consideration of evidence introduced with respect to all of the following factors:
(a) The love, affection, and other emotional ties existing between the parties involved and the child.
(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

*1202 (f) The moral fitness of the parties involved.
(g) The mental and physical health of the parties involved.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) The distance between the respective residences of the parties.
(l) Any other factor considered by the court to be relevant to a particular child custody dispute.
Rather than rebutting the joint custody presumption, the evidence in this case strengthens the conclusion joint custody is to the better interest of the child.
Although we fully sympathize with the trial judge's frustration in having to cope with joint custody when the parents, in the bitterness developed by their marital dispute, seek relief out of revenge or self-satisfaction rather than in the better interest of the child, we believe he abused his wide discretion by revoking the joint custody order in this case. The record reflects both parents love the child and the child wants to return that love and share his time between them.
Accordingly, the judgment of the court setting aside the joint custody is hereby reversed. Nevertheless, we believe there is merit to the mother's desire to have a better apportionment of the child's time during the school year. It is apparent the mother's failure to submit a joint custody plan prior to March 8, 1983, as ordered by the court, has severely limited the imput of her preference in the apportionment made by the joint custody order.
During the hearing on August 24, 1983, the wife expressed a preference for custody to alternate between parents either weekly, bi-weekly or monthly during the school year. Both parents are apparently satisfied with alternating custody every two weeks during the summer. On the appeal, the father, through his counsel, expressed the view that alternating custody, even by splitting the week during the school year, would be workable and acceptable to him.
Therefore, the joint custody established by the trial court by its judgment of May 18, 1983 is re-established with the following modification. The custody provided in the joint custody plan under the heading "Weekday Schedule" (During School Term) is modified to read as follows:
Commencing with the September 1984 school term the child will reside four days, including the weekend, with one parent and three days with the other parent, on an alternating basis. Thus, on the first full week of the September 1984 school term, on Monday, Tuesday and Wednesday, the minor child will be residing in his mother's home from the time she gets off work on Monday until Thursday morning when he must go to school. On Thursday, Friday, Saturday and Sunday the child will be residing in his father's home from the time he gets off work on Thursday until the child is returned to school on Monday morning. On the next week, the child's residency will alternate so that he will reside with the father on Monday, Tuesday and Wednesday and until he has to go to school on Thursday and then with the mother on Thursday, Friday, Saturday and Sunday and until he has to go to school on Monday.
In all other respects the joint custody plan as incorporated into the trial court's May 18, 1983 judgment is to remain in effect.
Each party to bear his own cost of the appeal.
REVERSED AND RENDERED.