576 So.2d 1158 (1991)
Vivian Marie DESORMEAUX, Plaintiff-Appellant,
v.
Charles Joseph MONTGOMERY, III, Defendant-Appellee.
No. 89-946.
Court of Appeal of Louisiana, Third Circuit.
March 13, 1991.
*1159 Thompson & Sellers, Jan Rowe, Abbeville, for plaintiff-appellant.
Albert J. Boudreau, Jr., Abbeville, for defendant-appellee.
Before FORET, LABORDE and KNOLL, JJ.
KNOLL, Judge.
This appeal concerns domestic litigation issues of alimony pendente lite and child support. The trial court awarded Vivian Marie Desormeaux alimony pendente lite in the amount of $300 per month, and $100 per child per month for a total of $300 per month child support.
Mrs. Desormeaux's husband, Charles Joseph Montgomery, III, contended in the trial court that he had limited income with which to gauge his alimony and child support obligations. The trial court concluded that there was not enough money to maintain the parties' lifestyle to which they were accustomed, and adopted the husband's assertion that he could only pay a total of $600 per month.
Mrs. Desormeaux contends on appeal that the trial court was manifestly erroneous in its award of alimony pendente lite, as well as its child support award. We affirm in part, amend, and render.
Vivian Desormeaux and Charles Montgomery, III were married on December 18, 1970, in Kaplan, Louisiana. Three children were born of the marriage; at the time of trial their ages were 17, 7, and 5, respectively. On April 13, 1989, Vivian Desormeaux initiated judicial proceedings for a legal separation based on Charles Montgomery's abandonment of the matrimonial domicile.
Prior to the hearing on the rules for temporary alimony and child support, the parties agreed that Mrs. Desormeaux would be awarded custody of their three minor children and that Mr. Montgomery would be granted particularly designated visitation rights. In addition, the parties agreed that Mrs. Desormeaux would be granted the use and occupancy of the family home pending a partition of the community.
In Mouton v. Mouton, 514 So.2d 528, 530 (La.App. 3rd Cir.1987), we synopsized the law and jurisprudence on alimony pendente lite as follows:
"The purpose of alimony pendente lite is to temporarily provide for the spouse who does not have sufficient income for his or her maintenance and to preserve the status quo insofar as maintenance and support are concerned. LSA-C.C. Art. 148; Arrendell v. Arrendell, 390 So.2d 927 (La.App. 2nd Cir.1980). The spouse who claims entitlement to alimony pendente lite bears the burden of proving entitlement under C.C. Art. 148, and must establish the insufficiency of his or her income in proportion to the other's means. Terjersen v. Terjersen, 420 So.2d 704 (La.App. 4th Cir.1982). In determining alimony pendente lite the trial judge is vested with wide discretion and only manifest abuse of this discretion will move this court to disturb an award of the trial court. Lamb v. Lamb, 427 So.2d 899 (La.App. 3rd Cir.1983).
* * * * * *
The determination of means with which one spouse is to satisfy the alimony obligation toward the claimant spouse is not based solely on income but also on any resource from which the wants of life may be supplied, and the entire financial condition of the spouse owing such obligation must be examined. Whatley v. Whatley, 430 So.2d 129 (La.App. 2nd Cir. 1983."
Likewise, with regard to child support we stated in Liles v. Liles, 509 So.2d 702, 703 (La.App. 3rd Cir.1987):
"Fathers and mothers have a mutual obligation to provide for the support, maintenance, and education of their children. LSA-C.C. art. 227; Chaudoir v. Chaudoir, 446 So.2d 951 (La.App. 3rd Cir. 1984). Child support is to be fixed according to the needs of the children and the circumstances of the parents obliged to pay the support. LSA-C.C. art. 231; Marcus v. Burnett, 282 So.2d 122 (La. 1973). A trial court is vested with great *1160 discretion in determining the amount of child support and its judgment will not be disturbed absent an abuse of discretion. Arceneaux v. Arceneaux, 426 So.2d 745 (La.App. 3rd Cir.1983)."
In reaching its determination of the appropriate award for alimony and child support, the trial court's oral reasons show that it disbelieved Mrs. Desormeaux's contention that she required in excess of $30,000 annually to maintain herself and her three children. Although we do not find this conclusion manifestly erroneous, we find that the trial court failed to fully consider all of Mr. Montgomery's means in reaching its alimony pendente lite and child support awards.
The evidence shows that Mr. Montgomery had three additional sources of funds, not shown on his affidavit, which were presented to the trial court. These would raise the net funds he had available per month from $600 to $2,352. The net funds are derived from the following sources.
Mr. Montgomery's parents own a warehouse in Kaplan. During 1988, Mr. Montgomery's parents gratuitously allowed their lessee to issue its $300 monthly rental check to their son and his family. Mrs. Desormeaux testified that Mr. Montgomery was still receiving this rental as of the hearing on the rules for alimony and child support.
The evidence also shows that during 1988, Mr. Montgomery received $14,632 from Vermilion Sack Dryer, a sole proprietorship owned by him. Allen Labry, a certified public accountant, testified that this money was technically not income, but constituted cash disbursements from the business. Mr. Montgomery testified that these funds were withdrawn from the business and deposited in his checking account to pay bills for his household and himself. Mrs. Desormeaux testified that these withdrawals from Vermilion Sack Dryer were used during their marriage to purchase food for the family, pay utility bills, and meet current living expenses. In conclusion, Mr. Montgomery stated that he continued to make these cash withdrawals into 1989.
Finally, the record establishes that Mr. Montgomery owns a 43% interest in Montgomery Farms. In 1988, the farm's financial statement showed that Mr. Montgomery received a cash disbursement of $2,748. Mr. Labry stated that although he projected that the farm was going to lose money for 1989, there was $23,000 available for future distribution.
After carefully reviewing the record, it is clear that the trial court did not consider these funds because, in its estimation, the $300 rental was a gratutity from Mr. Montgomery's parents, and the accountant projected no income for tax purposes for either Montgomery Farms or Vermilion Sack Dryer in 1989. In reaching these conclusions, we find manifest error. The evidence is uncontradicted that funds were generated over a period of time from each of these sources, and that these funds were used to maintain the lifestyle of the family. As such, these moneys should have been considered by the trial court in reaching a suitable amount for alimony pendente lite and child support.
Moreover, we find that the trial court should have also considered other means available to Mr. Montgomery in assessing his ability to pay alimony pendente lite and child support. In assessing temporary alimony, all resources, not only income, from which the wants of life may be supplied must be examined. Mouton, supra. Likewise, with regard to child support, the circumstances of the parents must be scrutinized. Liles, supra. In each instance, it is important to note that such an examination is not limited to a consideration of just income, but all financial means.
At the hearing, Mrs. Desormeaux showed that Mr. Montgomery inherited the following stocks and bonds: five $5,000 Washington Public Power Supply Systems Bonds; one hundred shares of Houston Lighting and Power Company preferred stock; one thousand three hundred forty three shares of AT & T common stock; one $1,200 eight and three-quarters AT & T thirty year debenture; four hundred two shares of Southwestern Bell common stock; two hundred sixty-eight shares NYNEX *1161 Corporation common stock; two hundred sixty-eight shares Bell Atlantic Corporation common stock; two hundred sixty-eight shares U.S. West common stock; four hundred two shares of Ameritech Common stock; six hundred three shares Bell South Corporation common stock; five hundred thirty-six shares of Pacific Telesis common stock; and five $5,000 tax free bonds, West Baton Rouge Parish School Board District 3, maturing in June 1990.[1]
It was also shown through proffered testimony that Montgomery Farms consists of 312 acres of land, and it owns equipment, including an extensive underground irrigation system. There is no evidence showing the farm's net value.
The record further establishes that Mr. Montgomery had a $6,000 Hi Fi savings account at the Kaplan State Bank, and an additional savings account at Vermilion Savings & Loan which had an approximate balance of $17,000. Mr. Montgomery stated that the Kaplan account consisted of his earnings as a diver together with the interest he earned on the stocks and bonds he owned. The Vermilion account was comprised of money he received as a Christmas present from his parents.
With regard to indebtedness, Mr. Montgomery showed monthly expenses of $620 together with certain unspecified fixed obligations to Kaplan State Bank and Vermilion Savings & Loan. Mrs. Desormeaux testified that the indebtedness to Kaplan consisted of a $32,000 home improvement loan, and $60,000 for the purchase of wire her husband had stored in a warehouse; the only testimony with regard to the reduction of this loan was the payment during the prior year of $3000. The other indebtedness shows that Mr. Montgomery co-signed a $30,000 promissory note with Andrew and Lynn Blanchard at Vermilion Bank & Trust Co. The only testimony regarding this latter indebtedness was by Mrs. Desormeaux; her testimony was that Mr. Montgomery was not required to make monthly payments on this note because he was only secondarily liable.
This, then provides us with a complete picture of the means of Mr. Montgomery against which the court may assess his familial obligations.
On appeal, Mr. Montgomery contends that Mrs. Desormeaux failed to prove her need for alimony pendente lite and child support. We disagree. In the trial court Mrs. Desormeaux submitted an affidavit of expenses. She has no income. On cross-examination, counsel for Mr. Montgomery focused his attack on the item of food costs, but generally left other items untouched. As noted hereinabove, the trial court exercised its discretion and discounted Mrs. Montgomery's expenses. Without saying what needs Mrs. Desormeaux proved, the trial court impliedly concluded that she carried her burden of proving her entitlement to alimony and child support because it made an award for each of those categories. After carefully considering, Mrs. Desormeaux's needs together with those of her minor children, in light of Mr. Montgomery's means to pay, we find that Mrs. Desormeaux proved her entitlement to alimony pendente lite of $500 per month, and child support of $250 per child per month.
For the foregoing reasons, the judgment of the trial court is affirmed in all respects except with regard to the trial court's assessment of alimony pendente lite and child support.
IT IS ORDERED, ADJUDGED, AND DECREED that Charles J. Montgomery, III pay the sum of $500 per month alimony pendente lite to Vivian M. Desormeaux, retroactive to April 13, 1989, the date of judicial demand, with said payments being due and payable on the 13th day of each month.
*1162 IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Charles J. Montgomery, III pay the sum of $250 per child per month to Vivian M. Desormeaux for the support of each of the three children born of the marriage, namely, Charles J. Montgomery, IV, William Montgomery, and Alaina Montgomery, said payment to continue until each child has reached the age of eighteen (18) or until graduation from high school, whichever occurs later, so long as the child is pursuing such education on a full-time basis. Costs of the trial court and this appeal are assessed to Charles J. Montgomery, III.
AFFIRMED AS AMENDED, AND RENDERED.
NOTES
[1] Mrs. Desormeaux proffered a copy of the Wall Street Journal for May 11, 1989, to prove the valuation of the stocks and bonds. The trial court excluded this testimony on grounds of relevancy and on the basis that one day's stock and bond report is insufficient to prove the true value of the stock. Nevertheless, our review of the record shows that the parties' joint income tax returns report an average yearly dividend income for 1987 and 1988 on these investments of $8,671.