638 So.2d 1176 (1994)
Deborah BRAZAN
v.
Richard Joseph BRAZAN, Jr.
No. 93 CA 2369.
Court of Appeal of Louisiana, First Circuit.
June 24, 1994.
*1177 Michael J. Bourquard, New Orleans, for plaintiff-appellant Deborah Brazan.
Daniel J. Nail, Napoleonville, for defendant-appellee Richard Joseph Brazan, Jr.
Before CARTER, GONZALES, and WHIPPLE, JJ.
CARTER, Judge.
This is an appeal from a judgment awarding alimony pendente lite, child support, and joint custody.

*1178 FACTS

On January 21, 1993, plaintiff, Deborah Brazan, filed a petition for divorce in accordance with LSA-C.C. art. 102. The petition alleged that, on June 6, 1990, she and her husband, Richard Joseph Brazan, Jr., were married and that, on December 15, 1990, a child, Richard Joseph Brazan, IV, was born of the marriage. In the petition for divorce, Deborah requested alimony pendente lite, child support, and temporary custody of the minor child.
On January 21, 1993, the trial court awarded temporary custody to Deborah. On April 13, 1993, an interim judgment was issued, ordering that, pending the resolution of the issues, child support be set at $509.00 per month, with an additional direct payment of $240.00 per month for child care services and an additional $120.00 per month for hospitalization. Alimony pendente lite was set at $200.00 per month.
On April 26, 1993, a final judgment was rendered, awarding joint custody, with equal sharing of time, to be allocated in seven-day periods or in other equal amounts as agreed by the parties. The judgment further awarded $314.07 per month for child support and $300.00 per month for alimony pendente lite. On July 16, 1993, a judgment was signed in accordance with the ruling.
Deborah appealed from the judgment, assigning the following specifications of error:
1. The award of $300.00 alimony pendente lite was contrary to the law and evidence.
2. The award of 50/50 equal sharing of time of this two-year-old child was contrary to the law and evidence.
3. The calculation reducing the defendant-appellee's child support payments was contrary to the law and evidence.

JOINT CUSTODY
Deborah contends that the trial court abused its discretion in awarding joint custody with equal sharing of time.
LSA-C.C. Art. 131, formerly art. 146, provides that the standard to be applied by the trial court in determining custody of a child of a dissolved marriage is that of the "best interest of the child." Turner v. Turner, 455 So.2d 1374, 1378 (La.1984). In determining the best interest of the child, the court is guided by the factors enumerated in LSA-C.C. art. 131C(2),[1] which, at all times pertinent hereto, provided:
There is a rebuttable presumption that joint custody is in the best interest of a minor child.
(2) The presumption in favor of joint custody may be rebutted by a showing that it is not in the best interest of the child, after consideration of evidence introduced with respect to all of the following factors:
(a) The love, affection, and other emotional ties existing between the parties involved and the child.
(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(f) The moral fitness of the parties involved.
(g) The mental and physical health of the parties involved.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

*1179 (j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) The distance between the respective residences of the parties.
(l) Any other factor considered by the court to be relevant to a particular child custody dispute. However, the classification of persons according to race is neither relevant nor permissible.
Although joint custody means a physical sharing of the child in addition to both parents' participation in decisions affecting the child's life, it does not necessarily mean a fifty-fifty sharing of time. Each case will depend on the child's age, the parents' situations, and other factors relevant to a particular child custody dispute. Swope v. Swope, 521 So.2d 656, 659 (La.App. 1st Cir.1988); Pevey v. Pevey, 484 So.2d 959, 962 (La.App. 1st Cir.1986). Although divided physical custody is an option in some circumstances, the courts have been willing to "split the child" only when the parents live a short distance from one another and the child is not required to attend different schools. Swope v. Swope, 521 So.2d at 659, citing Meylian v. Meylian, 478 So.2d 218 (La.App. 3rd Cir. 1985); Brooks v. Brooks, 469 So.2d 398 (La. App. 3rd Cir.1985); Peyton v. Peyton, 457 So.2d 321 (La.App. 2nd Cir.1984); Duhe v. Duhe, 451 So.2d 1198 (La.App. 5th Cir.1984); Black v. Black, 460 So.2d 1175 (La.App. 2nd Cir.1984), writ denied, 463 So.2d 1318 (La. 1985); Slack v. Slack, 458 So.2d 177 (La.App. 5th Cir.1984).
A trial court has much discretion in awarding and implementing child custody awards. Stephenson v. Stephenson, 404 So.2d 963, 966 (La.1981). An appellate court will not set aside a trial court's custody award in the absence of an abuse of that discretion. See Swope v. Swope, 521 So.2d at 659.
Richard Brazan testified that he had helped care for his son since his birth and enjoyed caring for him. Richard stated that he missed taking care of his son and spending time with him. However, Richard stated that, when he does get to visit his son, they spend very much time together and do fun things.
Richard indicated that, if he obtained custody of his son, the child would remain in the same day care center as he currently attends. Richard stated that he would be available to pick up his son from the day care center on most occasions. However, Richard acknowledged that, as an attorney, he occasionally is required to work late, but that, in the event he obtained equal custody, he would make arrangements for someone to pick up his son at the day care center on those rare occasions.
Richard testified that he was living in Vacherie at the time of trial, but that he would move to Baton Rouge if he obtained joint custody of his son. Richard stated that if he received custody of his son for every other weekend only, he would lease a one-bedroom apartment, but that if he received joint custody with equal sharing of time, he would lease a two-bedroom apartment.
Christopher Varlado, Jr., a clinical social worker, testified that joint custody with equal sharing of time would be beneficial to the child and that he did not foresee any problems with the arrangement since Richard would be moving to Baton Rouge. Varlado stated that approximately half of his recent cases use joint custody arrangements with equal sharing of time. Relying on his research, Varlado explained that a child requires both masculine and feminine role models and that one parent cannot possibly play both roles to the child. He also stated that a visiting parent cannot really be an object of love for a child because there is a lack of consistency and attention on a day-to-day basis. Therefore, Varlado recommended that joint custody with equal sharing of time would serve the best interest of the Brazans' two-year-old child.
Susan Parrot, a clinical social worker, testified that she had never recommended a joint custody arrangement with equal sharing of time where a two-year-old was involved. Relying upon her research, Parrot indicated that frequent, consistent, short visitation *1180 is preferable for a child under three years of age.
After hearing all of the testimony, the trial judge took the matter under advisement and subsequently determined that the best interest of the child would be served by awarding joint custody with equal sharing of time. The notice of judgement stated that the trial court "was impressed with both Mr. and Mrs. Brazan's apparent ability to communicate concerning the child's welfare and their ability to parent."
After reviewing the record and applicable jurisprudence, we conclude that the trial court did not abuse its much discretion in finding that the best interest of the child would be served by awarding the parties joint custody with equal sharing of time.

CHILD SUPPORT
Deborah contends that the trial court abused its discretion in reducing Richard's child support payments from $628.14 to $314.07.
Louisiana's Child Support Guidelines are set forth in LSA-R.S. 9:315.1. Under that statute, a court is obligated to follow the amounts obtained by the use of the worksheet set forth in LSA-R.S. 9:315, unless certain statutory reasons for deviation are met. State, Department of Social Services v. White, 606 So.2d 31, 33 (La.App. 5th Cir. 1992).
In setting the child support award in the instant case, the court found that Richard's adjusted monthly income was $4,281.00 and that Deborah's was $960.00, for a combined adjusted monthly income of $5,241.00. Using the Child Support Guidelines, the court determined that the monthly support obligation is $722.00 and that Richard's percentage of $722.00 is 87%, or $628.14. However, because Richard would have the child fifty percent of the time and because he had agreed to pay the day care expenses of $240.00 per month and the cost of medical insurance for the child, the court reduced the child support award to $314.07. Thus, the court deviated from the guidelines and set a lower amount of child support.
In deviating from the guidelines the trial court must consider LSA-R.S. 9:315.8E, which provides as follows:
In cases of joint custody, the court shall consider the period of time spent by the child with the non-domiciliary party as a basis for adjustment to the amount of child support to be paid during that period of time. The court shall include in such consideration the continuing expenses of the domiciliary party.
Apparently the trial court considered the fifty-fifty custody arrangement and LSA-R.S. 9:315.8E in reducing the child support award. After reviewing the entire record in this matter, we are convinced that the trial court did not abuse its vast discretion in adjusting the award.

ALIMONY PENDENTE LITE
Deborah contends that the award of $300.00 alimony pendente lite is insufficient, considering the evidence presented at the hearing.
Alimony pendente lite is governed by LSA-C.C. art. 111, formerly article 148, which provides as follows:
If the spouse has not a sufficient income for maintenance pending suit for divorce, the judge may allow the claimant spouse, whether plaintiff or defendant, a sum for that spouse's support, proportioned to the needs of the claimant spouse and the means of the other spouse.
The general rule in awarding alimony pendente lite requires that the award be proportionate to the needs of the claimant spouse and the means of the other spouse. Ridings v. Ridings, 595 So.2d 343, 344 (La.App. 2nd Cir.1992). The determination of the means with which one spouse is to satisfy the alimony obligation toward the claimant spouse is not based solely on income, but also on any resource from which the wants of life may be supplied, and the entire financial condition of the spouse owing such obligation must be examined. Desormeaux v. Montgomery, 576 So.2d 1158, 1159 (La.App. 3rd Cir.1991). If the needs of the claimant spouse exceed the ability of the other spouse to pay, then the award should be fixed at an amount which *1181 will, as much as possible, be just and fair to all parties involved. Ridings v. Ridings, 595 So.2d at 344.
The purpose of alimony pendente lite is to provide support temporarily, pending litigation, for the spouse who does not have sufficient income for his or her maintenance. Alimony pendente is, in essence, designed to maintain the status quo insofar as the economic circumstances of the marriage are concerned. Schelldorf v. Schelldorf, 568 So.2d 168, 173 (La.App. 2nd Cir.1990). It relates to facts as they existed during the time the parties were living together and as they actually exist at the time the litigation commences, not to future possibilities and capabilities. Ridings v. Ridings, 595 So.2d at 345.
The amount of alimony pendente lite is left largely within the sound discretion of the trial judge and will not be disturbed upon review in the absence of clear abuse of that discretion. See Jenkins v. Jenkins, 616 So.2d 786, 788 (La.App. 2nd Cir.1993); Ridings v. Ridings, 595 So.2d at 345; Desormeaux v. Montgomery, 576 So.2d at 1159.
Deborah testified that, when she and Richard were first married, they lived in her house in Paincourtville, paying a house note of approximately $350.00 per month. Eventually they moved to Baton Rouge and rented a house for $950.00 per month. Deborah stated that she has a gross monthly income of $960.00 and that she receives $1030.00 in monthly child support for her three children of a previous marriage.
Deborah submitted into evidence an income-expense affidavit, indicating that her gross monthly income is $1990.00 (consisting of $960.00 monthly income from her employment as secretary for St. George Catholic Church and $1,030.00 child support for three children of a previous marriage) and that her total monthly living expenses (excluding expenses of the three children of her previous marriage) are $2,628.00.[2]
Richard testified that his 1992 income was much less than the two previous years. He indicated that his average gross annual income for the last three years was $51,371.00, or $4,281.00 per month. Richard testified with regard to his business bank account, noting that the account statement included income as well as loan proceeds. Richard acknowledged that he owned interests in two closed corporations and a partnership, but he stated that the companies had a negative net worth. Richard submitted into evidence a schedule of Deborah's living expenses, dividing the expenses among Deborah, their son, and Deborah's three children from her previous marriage. The schedule showed Deborah's monthly expenses for herself and the Brazan child to be $1,447.50.
A review of the evidence shows that the Deborah has an adjusted gross monthly income of $960.00. The evidence also reveals that Deborah receives $1,030.00 per month for the support of her three children of a previous marriage. Taking into account the award of $300.00 alimony pendente lite and $314.07 child support, Deborah has a monthly total income of approximately $2,600.00.
Richard has an adjusted gross monthly income of $4,281.00. However, considering that he must pay $314.07 child support, $300.00 alimony pendente lite, $240.00 for day care, and $120.00 for the child's health insurance premiums, he is left with approximately $3,300.00 for his monthly expenses, which include a considerable amount of debt, and will soon include expenses of renting an apartment when he moves to Baton Rouge.
*1182 After reviewing the incomes and expenses of both parties, we conclude that the trial court did not abuse its much discretion in awarding Deborah alimony pendente lite in the amount of $300.00 per month.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against Deborah Brazan.
AFFIRMED.
NOTES
[1] Book I, Title V, Chapter 2, Section 3 of the Civil Code ("Child Custody"), formerly consisting of Articles 131 to 158, has been revised, amended, and re-enacted by Acts 1993, No. 261, effective January 1, 1994, to comprise Articles 131 to 136. The amendment is applicable to actions commenced after January 1, 1994. LSA-R.S. 9:387.
[2] Deborah's living expenses included the following:

Rent/Mortgage Note $960.00
Food 150.00
Household Supplies 100.00
Clothing 50.00
Transportation/Fuel Cost 340.00
Medical 50.00
Dental 10.00
Prescription 40.00
Electricity 200.00
Cable 42.00
Water 39.00
Telephone 100.00
Kentwood 27.00
Laundry 30.00
Personal and Grooming 50.00
Day Care 240.00
Car Insurance 50.00
YMCA 10.00
Therapy/Counselling 140.00
 _________
Total $2,628.00