657 So.2d 387 (1995)
Elita Romero DARNALL, Defendant-in-Rule-Appellee,
v.
Clayton E. DARNALL, Plaintiff-in-Rule-Appellant.
No. 95-169.
Court of Appeal of Louisiana, Third Circuit.
May 31, 1995.
*388 Nancy Dunning, Lafayette, Paul Macarius Hebert, Jr., Baton Rouge, Colleen Ann McDaniel, Lafayette, for Elita Romero Darnall.
Paula Kobetz Woodruff, Lafayette, for Clayton E. Darnall.
Before KNOLL, SULLIVAN and BROUILLETTE[1], JJ.
SULLIVAN, Judge.
This is a suit to modify a joint custody decree. The father, Clayton E. Darnall, appeals the trial court's failure to award him equal physical custody of his minor son or, alternatively, extended visitation during the school week. The trial court did modify the custody plan, granting the father extended visitation during the summer months. For the following reasons, we affirm, subject to the modifications discussed below.

FACTS
Clayton E. Darnall (Clay) and Elita Romero Darnall (Elita) separated in 1988, when their minor son, John Bryce (Bryce) was almost two (2) years old. On March 20, 1989, the parties stipulated in open court that Elita was to be the domiciliary parent, with Clay to have custody of Bryce on alternating weekends from Thursday evening through Monday morning and on alternating Wednesday evenings. The stipulation also included a holiday schedule and two (2) weeks of visitation for Clay in two (2) of the summer months. This arrangement was incorporated in the parties' final judgment of divorce on July 11, 1990 and was still in effect when Clay filed the instant rule on October 11, 1993. At the time the rule was filed, Clay had remarried, to Lynette Cortese, and Bryce, then seven (7), was in the first grade.
Over the years, Clay and Elita have demonstrated an inability to communicate or cooperate on even the smallest matters concerning Bryce. Beginning in June of 1989, the parties filed a battery of pleadings against each other, including a rule by Elita to terminate joint custody, rules by each party to hold the other in contempt and rules by each party to increase or eliminate certain court ordered allowances. In November of 1989, the court consolidated these rules in a single hearing, rendering written reasons denying most of them on December 4, 1989. These reasons, which denied Elita's request *389 to terminate joint custody, were reduced to judgment on March 27, 1990. The March 27, 1990 judgment also contained an attached Plan for Implementation of Joint Custody, in which the court accepted the same visitation schedule that was set out in the parties' original stipulation.
In May of 1991, Elita and Clay were again in court because they could not agree on the specific dates of Clay's summer visitation schedule with Bryce. Sometime thereafter, Clay also filed a rule to reduce child support, the denial of which was affirmed by this court on May 12, 1993.
On October 11, 1993, Clay filed the instant rule, seeking equal physical custody of Bryce or, alternatively, extended visitation for the entire summer vacation. Clay also sought to amend the joint custody plan with language that would require each parent to encourage a close relationship between the child, the other parent and the step-parent.
After hearing evidence for three (3) days, the court first granted the parties fifteen (15) days to submit a consent judgment, imploring them to reach an agreement for the good of their son. They could not. On May 23, 1994, the trial court filed written reasons denying Clay's request for equal physical custody but allowing additional visitation times during the school week and extended visitation for the entire months of June and July. These reasons, reduced to judgment on May 25, 1994, also included language governing the parents' participation in school events as well as the language requested by Clay requiring each parent to foster a close relationship with the other parent and the step-parent.
On June 6, 1994, Elita filed a motion for a new trial. The trial court in part granted this motion on August 3, 1994, by amending the May 25, 1994 judgment to delete the additional time allotted to Clay for visitation during the school week. Upon rendition of this amended judgment, Clay filed a motion for a new trial. This motion was denied on September 21, 1994. Clay then devolutively appealed from the judgments of May 25, 1994, August 3, 1994 and September 22, 1994.

OPINION
Clay first argues that the trial court committed an error of law by refusing to apply La.Civ.Code art. 131(D), as amended by Acts 1993, No. 905, § 1. That amendment added the sentence, "To the extent feasible, physical custody of the children shall be shared equally."
Act 905 had no effective date; hence, it became effective on August 15, 1993. However, on the date that Act 905 was passed, the legislature had already repealed and reenacted portions of La.Civ.Code art. 131 as La.R.S. 9:335, by Acts 1993, No. 261. Act 261 had an effective date of January 1, 1994. La.R.S. 9:335, as contained in Act 261, did not include the quoted sentence found in Act 905. To reconcile the two acts, the Louisiana State Law Institute transferred the quoted sentence to La.R.S. 9:335 as subsection (A)(2)(b). The jurisprudence has concluded that the legislature intended the "equal sharing where feasible" language to be effective as soon as possible, i.e., August 15, 1993. Broussard v. Broussard, 94-0573 (La.App. 4 Cir. 11/30/94); 646 So.2d 478. We therefore find that the language does apply to Clay's rule to modify joint custody, filed on October 11, 1993.
We do not agree with Clay, however, that the trial judge refused to apply the "equal sharing" amendment. At the close of the evidence, the trial judge commented extensively on the record before him. His detailed analysis convinces us that he considered all possible resolutions of this dispute. That the judge expressed his disagreement with the law does not mean that he refused to apply it. Rather, he considered and rejected this proposal as not being in Bryce's best interest.
The amendment in Act 905 represents a substantial departure from prior law. Consistently, courts have held that joint custody has not meant a fifty-fifty sharing of time. Brazan v. Brazan, 93-2369 (La.App. 1 Cir. 6/24/94); 638 So.2d 1176. This amendment, however, does not change the trial court's requirement to consider, among other things, the best interest of the child. Ledford v. Ledford, 94-877 (La.App. 1 Cir. *390 12/22/94); 648 So.2d 1060; writ denied, 95-223 (La. 3/17/95); 651 So.2d 278. Muller v. Muller, 94-281 (La.App. 3 Cir. 10/5/94); 643 So.2d 478.
It is well settled that the best interest of the child is the paramount consideration in custody matters. The trial court is vested with vast discretion in matters of child custody and visitation, and its determination is entitled to great weight on appeal. Muller, Id.
A party seeking to change a custody decision rendered in a considered decree bears the heavy burden of proving that continuation of the present custody arrangement is so deleterious to the child as to justify modification or of proving that the harm likely to be caused by a change in environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). A considered decree is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody and control of the children. Barnes v. Cason, 25,808 (La.App. 2 Cir. 5/4/94); 637 So.2d 607, writ denied, 94-1325 (La. 9/2/94); 643 So.2d 149.
Where the original custody decree was entered by stipulation of the parties, it is not a considered decree. Barnes, Id. Where there has not been a considered decree, the heavy burden of proof in Bergeron is inapplicable. The party seeking a modification of custody in such a case need only show that there has been a change of circumstances materially affecting the child's welfare and that the proposed change is in the best interest of the child. Ledford, 94-877, 648 So.2d 1060.
In the instant case, the parties initially stipulated to joint custody. Subsequently, Elita filed a rule to terminate joint custody, which was denied after a hearing. The transcript of that hearing is not in the record of the instant rule. It is unclear as to whether the judgment denying Elita's rule to terminate is a considered decree. The policy behind the Bergeron rulethat custody litigation should be discouraged as harmful to childrenwould support a finding that the heavy burden should apply. We need not decide this novel question here, however, because we find that Clay has not met the lesser burden of showing a change in circumstances such that equal physical custody is in Bryce's best interest.
The change in circumstances that Clay relies upon include (1) that Bryce is at an age where he needs more of a male role model in his life; (2) that Clay has rearranged his work schedule to spend more time with Bryce, particularly during afternoons on school days; and (3) that through his remarriage, Clay is now able to provide a stable, friendly environment for Bryce. Elita sees Clay's proposal as a drastic change, which would result in Bryce being "bounced around" during the school year.
Clay and Elita have not allowed their personal conflicts to interfere with their parenting skills. The consensus among the three (3) child psychologists who testified at trial was that Bryce was remarkably well adjusted, with no signs of separation anxiety or depression. They described his personality as gregarious, friendly, outgoing and happy. Bryce's performance in school is well above average. Additionally, in our opinion, Bryce displayed wisdom beyond his years when he told one psychologist that "no way" would he choose between his mother or his father.
Nonetheless, the tension in his family has produced some negative results. Elita apparently harbors a deep resentment for Clay's new wife, Lynette. This resentment has resulted in at least one hostile encounter between the two women in front of Bryce. Elita has also told Bryce that she does not like Lynette but that Bryce is free to be friends with her if he chooses. Clay, too, has contributed to the unfortunate situation by refusing to handle even minor details of the custody arrangement over the phone and by insisting that Lynette accompany him at times when he knew that her presence may have upset either Elita or Bryce. Understandably, Bryce has exhibited anxiety over the instant litigation and in situations where his mother, father and step-mother are all present.
*391 After considering the totality of the evidence, we find the trial court did not err in refusing to order an equal sharing of custody in this case. A child's living arrangement should not be upset simply to afford one parent a greater sense of control in the child's life or because the parent's schedule can better accommodate time with the child. The proposed change must be in the best interest of the child. Here, the child has fared remarkably well under the current plan. Given the history of these parties, we find that the proposed plan would only create greater tension in the child's life. Clay has shown that Bryce needs more time with his father; however, this result can be accomplished by less disruptive means.
Dr. Kenneth Bouillion testified that Bryce, at age seven (7), has reached the age of "rapprochement" when he will begin to see himself reflected in his life's primary male role model. Dr. Bouillion believed that more time with Bryce's father was essential to Bryce's healthy progression. Clay testified that he would like more participation in Bryce's athletic and academic activities. Elita's expert, Dr. Luke Elliott, saw no problem with Bryce having extended vacation and afternoon visits with his father, provided that the schedule is predictable and has consistent homework and study patterns.
Clay submitted an alternate plan which provided for extended visitation for the entire months of June and July and additional visitation during the school week. The trial court, in its amended judgment of August 3, 1994, allowed the extended summer visitation but not the proposed visitation schedule for the balance of the year.
We find no error in the trial court's rejection of the requested visitation schedule. Currently, Bryce spends every afternoon except Friday with his maternal grandparents, who oversee his homework. Bryce's above average performance in school is an indication of how well this arrangement is working. The changes requested by Clay would only add confusion and would unduly disrupt Bryce's homework schedule.
Dr. Elliott testified that Bryce understood his scheduled visits and did not want them to change. However, Dr. Elliott had no objection to Clay picking Bryce up immediately after school on his regular visitation days instead of at 5:30 p.m. In fact, Dr. Elliott testified that such an arrangement would be preferable, as long as the child was with his natural parent and not another caregiver.
We will therefore amend paragraph 2 of the August 3, 1994 judgment to provide that Clay's custody time on alternating Wednesdays and on alternating Thursdays shall begin upon Bryce's release from school. In all other respects, the judgments of May 25, 1994 and August 3, 1994 are affirmed. Cost of these proceedings are assessed equally to Clayton E. Darnall and Elita Romero Darnall.
AFFIRMED AS AMENDED.
NOTES
[1] Judge Harold Brouillette of the Twelfth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.