| THIBODEAUX, Judge.
Delbert Merrell Kulbeth, II appeals a trial court’s judgment which determined that it was in the best interest of Lauren Michelle Kulbeth, the youngest child born of the marriage of Mr. Kulbeth and his former wife, Dinah Jo Roberts Kulbeth, to continue attending her current public elementary school. Mr. Kulbeth desired that Lauren Michelle attend " a private school; Ms. Kulbeth sought' to maintain Lauren Michelle’s enrollment at her current public elementary school.
We agree with the trial court and find that Lauren Michelle Kulbeth should remain enrolled at Plantation Elementary School in Lafayette Parish.
I.

ISSUE

We shall consider whether the trial court erred in finding that: Lauren Michelle. Kulbeth’s enrollment at Plantation Elementary School should be maintained beyond the third grade.
*970 II.

FACTS

Delbert Merrell Kulbeth, II and Dinah Jo Roberts Kulbeth were divorced on July 7, 1997. A Consent Judgment signed on July 15, 1997, awarded Mr. and Ms. Kul-beth joint custody of their six minor children. Each was also named as a co-domiciliary parent. Several stipulations were made in the Joint Custody Plan, including the schooling of the children. It is the schooling of the youngest Kulbeth child, Lauren Michelle, which is at issue.
LThe Joint Custody Plan provided that Lauren Michelle (“Michelle”) would attend Plantation Elementary School, a public elementary school in Lafayette Parish. Prior to her completion of Plantation Elementary School, by mutual agreement of her parents, Michelle would attend Westminster Christian Academy in St. Landry Parish or some other agreeable private school. Once Michelle had completed Plantation Elementary School, she was to attend a public or private school as was mutually agreeable to both parents. Mr. and Ms. Kulbeth were each made responsible for the transportation of Michelle to and from school while she was in their physical custody.
After making this agreement, however, and without the awareness of Mr. or Ms. Kulbeth, Plantation Elementary School extended its grade levels to include grades four and five. This case arose when Michelle completed the third grade at Plantation Elementary School. Ms. Kulbeth desired that Michelle remain at Plantation; Mr. Kulbeth desired that Michelle attend Westminster Christian Academy, a school attended by two of the Kulbeths’ children, William Keith and Phillip John. Mr. Kul-beth filed a rule to have Michelle enrolled at Westminster Christian Academy.
The trial judge determined that Michelle appeared to be “happy and well-adjusted and comfortable at Plantation” and denied Mr. Kulbeth’s motion. Mr. Kulbeth appealed.
III.

LAW AND DISCUSSION

Standard of Review
It is well settled that the best interest of the child is the paramount consideration in custody matters. The trial court is vested with vast discretion in [■¡matters of child custody, and its determination is entitled to great weight on appeal. Darnall v. Darnall, 95-169 (La.App. 3 Cir. 5/31/95); 657 So.2d 387. As such, the trial court’s discretion will not be disturbed on review in the absence of a clear showing of abuse. In addition to the paramount best interest of the child standard, this Circuit applies the change of circumstances rule to change of custody matters which follow consent judgments. A party seeking a modification of a consent decree must still establish that there has been a material change of circumstances since the custody decree was rendered. Kleiser v. Kleiser, 619 So.2d 178, 180 (La.App. 3 Cir.1993).
Education of Michelle Kulbeth
Mr. Kulbeth’s sole contention is that the trial court erred in finding that Michelle Kulbeth should remain enrolled at Plantation Elementary School in Lafayette Parish. He furthers this contention by asserting that Michelle would be afforded the benefits of a superior private school education if she were to attend Westminster Christian Academy. This court commends Mr. Kulbeth’s concern and interest in his daughter’s education; however, upon review of the record in its entirety, we do not find an abuse of the trial court in denying Mr. Kulbeth’s motion to have Michelle enrolled at Westminster Christian Academy. We are thus constrained to adhere to the trial court’s judgment that Michelle should remain at Plantation Elementary School.
Michelle Kulbeth testified in chambers that she had a “bad” feeling about attend *971 ing Westminster Christian Academy, stating that Plantation was a better school than Westminster. When asked how had she made that decision, she responded that her mom and her older sister, Katherine Marie, told her that Plantation was better. Mr. Kulbeth insists that it was exclusively Ms. Kulbeth’s statements to |4their daughter which caused Michelle to fear attending Westminster. He also asserts that Michelle’s testimony reveals that she was threatened by her mother with the possibility that if Michelle were to attend Westminster, Ms. Kulbeth would be unable to attend school lunches and field trips with Michelle. In making these arguments, Mr. Kulbeth conveniently ignored the fact that Michelle likewise testified that her father told her that Westminster was a better school than Plantation. As such, we cannot agree with Mr. Kulbeth that his former wife unduly influenced Michelle’s desire to continue attending Plantation Elementary School.
Upon judicial review, we conclude the decision of Ms. Kulbeth, the co-domiciliary parent, to maintain Michelle’s enrollment at Plantation, was in the best interest of Michelle. We are unable to find substantial differences between the education afforded to Michelle at Plantation and that which would be obtained at Westminster. We also find no material change of circumstances which would justify a modification of the consent decree.
Mr. Kulbeth presented testimony that Michelle’s initial Stanford test score[1] in math was below fifty; however, after twenty hours of tutoring by Westminster assistance, her score increased to seventy-five. We agree with Mr. Kulbeth that this improvement is proof that Michelle can do better. However, it does not necessarily indicate that she can do better only if she becomes a student at Westminster. Michelle’s improvement exhibits the fact that with tutoring, regardless |fiof which school she attends, there is a probability that her grades and standardized test scores will improve.
The trial court observed that Michelle is a bright child who is well-adjusted to Plantation Elementary School. Louisiana Civil Code Article 134(4) emphasizes maintaining continuity of the child’s environment. We find this especially compelling in this case as it appears that Michelle is functioning well at Plantation Elementary School, both academically and socially. The Joint Custody Plan specifically provided that once Michelle completed Plantation Elementary School, she would attend a public or private school agreed to by both parents. Mr. Kulbeth also consented to the additional stipulation that prior to Michelle’s completion of Plantation Elementary School, by mutual agreement of the parents, Michelle would attend Westminster or some other agreeable private school. Since Mr. and Ms. Kulbeth were unwilling to agree upon a school for Michelle before her completion of Plantation, we find the trial court appropriately made the decision to maintain Michelle’s enrollment at Plantation until she completes her matriculation there.
We agree with the trial court, that if this case would have arisen at the completion of Michelle’s fifth grade year, and the issue was whether she would remain in the public school system for middle school or whether she would enroll at Westminster, then we may have reached a different conclusion. Mr. Kulbeth failed to show that *972 there has been a material change of circumstances which would’ warrant a reversal of the trial court’s judgment. Michelle seems to be content and secure at Plantation and, thus, we are unwilling to risk her happiness and her academic productivity at this critical level of her education.
_kiv.

CONCLUSION

Based on the foregoing reasons, the judgment of the trial court is affirmed.
All costs are assessed to Delbert Merrell Kulbeth, II.
AFFIRMED.

. The Stanford Achievement Test is administered to assist teachers in planning their instructional programs, to provide parents and guardians with objective information on their child's progress in learning basic academic knowledge and skills, and to provide school, school district, and state grade level comparisons. The Stanford Achievement Test uses a multiple-choice test format at all grade levels.
The definition of a percentile rank is the percent of people in the norming sample who have scores less than or equal to a student’s score. For example, a student with a reading comprehension score at the 61st percentile scored equal to or better than 61 percent of the students in the norming sample. Percentile ranks range from 1 to 99 with 50 as the average score.